672 So.2d 409 (1996)
Tammy Rivault REMSON
v.
Christopher Gene REMSON.
No. 95 CA 1951.
Court of Appeal of Louisiana, First Circuit.
April 4, 1996.
*410 Vincent A. Saffiotti, Baton Rouge, for Plaintiff-Appellant Tammy Rivault Remson.
Deborah P. Gibbs, Baton Rouge, for Defendant-Appellee Christopher Gene Remson.
Before WATKINS and FOIL, JJ., and TANNER, J. Pro Tem.[1]
WATKINS, Judge.
Mr. Christopher Remson and Mrs. Tammy Remson appeal various judgments of the trial court concerning issues of custody and child support.

FACTS
Christopher and Tammy Remson were married on July 27, 1984, in Baton Rouge, Louisiana. Two children were born of their marriage, Patrick Christopher Remson, born March 16, 1988, and Allison Adair Remson, born June 8, 1990.
Mr. and Mrs. Remson separated on June 22, 1992. At that time the parties rented a one bedroom apartment and alternated staying in the apartment in order for the children to continue living in the family home without disruption. Approximately six months later, the parties agreed that Mrs. Remson could remain in the home and the children would visit their father outside the home. The parties were divorced on August 6, 1993.
The parties were able to agree on the visitation schedule and support of the children until March of 1994, when Mrs. Remson filed a petition for custody and child support.[2] Mr. Remson filed an answer and reconventional demand requesting custody, child support, and a mental evaluation of the parties. The court appointed Dr. Donald Hoppe to conduct the mental evaluation. After Dr. Hoppe's evaluation of Mr. and Mrs. *411 Remson, the trial in this matter began on September 7, 1994. Dr. Hoppe testified as to his evaluations of the parties and recommended that the parties try to mediate their differences. Pursuant to this recommendation, the trial was continued and the trial judge ordered the parties to attend mediation.
The court also ordered the immediate implementation of the following custody schedule, relative to Mr. Remson's custody of the children, as suggested by Dr. Hoppe:
1. Every other weekend from Friday at 3:40 p.m. until Monday morning at 8:40.
2. Every Wednesday evening from 3:40 until 8:40 the following Thursday morning.
3. Mondays following Mrs. Remson's weekend custodial period from 3:40 until 7:00 p.m.
4. Every Friday morning from 7:30 a.m. until school begins.
This schedule gave Mr. Remson additional time with the children every Friday morning for one hour prior to school and on Monday afternoons following Mrs. Remson's weekend.
The parties were unable to reach an agreement in mediation, and the trial resumed on October 7, 1994. After taking the matter under advisement, the court rendered judgment on November 14, 1994, awarding joint custody and naming Mrs. Remson as the domiciliary parent; the court ordered that the existing schedule of custodial periods with the father be maintained, with holidays to be divided equally between the parties. The court further ordered Mr. Remson to pay child support to Mrs. Remson in the sum of $500.00 per month; Mr. Remson was also ordered to maintain medical insurance on the children and to pay 39 percent of any uncovered medical expenses.
Mr. Remson filed a motion for new trial as to all issues. The court granted a new trial limited to the issue of naming a domiciliary parent. The court heard arguments on March 7, 1995, and the court rendered judgment on March 22, 1995, reversing its previous ruling naming Mrs. Remson the domiciliary parent. The court for "good cause shown" declined to name a domiciliary parent. Judgment to that effect was signed on April 18, 1995.
Mr. Remson appealed from the judgments signed on December 5, 1994, February 24, 1995, and April 18, 1995, alleging the following assignments of error:
1. The court erred in failing to name Chris Remson the domiciliary parent.
2. The trial court erred in failing to adopt Chris Remson's custodial schedule.
3. The court erred in ordering Chris Remson to pay child support to Tammy Remson.
Mrs. Remson appealed the judgment of April 18, 1995, alleging as error the trial court's failure to name her as the domiciliary parent of the children.
In its written reasons for judgment the trial court originally named Mrs. Remson as the domiciliary parent and maintained the present visitation schedule "because although Mr. Remson is very active in the children's lives Mrs. Remson was their primary caretaker; the children are well adjusted and happy; and Dr. Hoppe testified that although it would be desirable to spend as much time with each parent as possible it was important for the children of that age to have more of a constant residence."
Mr. Remson's primary argument on appeal is that he is entitled to equal time with his children pursuant to LSA-R.S. 9:335. He also believes that he is better suited emotionally to be the domiciliary parent.
Each child custody case must be viewed in light of its own particular set of facts and circumstances with the paramount goal of reaching a decision which is in the best interest of the children. Muller v. Muller, 94-281 (La.App. 3d Cir. 10/5/94), 643 So.2d 478. The trial court is vested with vast discretion in matters of child custody and visitation, and its determination is entitled to great weight and will not be disturbed on appeal unless a clear showing of abuse of its discretion is made. Stephenson v. Stephenson, 404 So.2d 963 (La.1981).
Joint custody determinations are governed by LSA-R.S. 9:335 which provides in pertinent part as follows:

*412 A. (1) In a proceeding in which joint custody is decreed, the court shall render a joint custody implementation order except for good cause shown.
(2)(a) The implementation order shall allocate the time periods during which each parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents.
(b) To the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally.

(3) The implementation order shall allocate the legal authority and responsibility of the parents.
B. (1) In a decree of joint custody the court shall designate a domiciliary parent except when there is an implementation order to the contrary or for other good cause shown. (Emphasis supplied)
LSA-R.S. 9:335 enacted by Acts 1993, No. 261, § 5, and the previous amendments to LSA-C.C. art. 131(D)[3] as amended by Acts 1993, No. 905, § 1, represent a substantial departure from prior law. Previously, the courts consistently held that joint custody did not mean a 50-50 sharing of time. Brazan v. Brazan, 93-2369 (La.App. 1 Cir. 6/24/94), 638 So.2d 1176. However, the legislative amendments indicate a clear intent to foster an equal sharing of custody when it is feasible and in the best interests of the children. We believe that the best interest of the child remains the paramount concern in making custody determinations; however, that interest must be balanced with a parent's right to equally share the physical custody of the child where feasible. See Bynog v. Bynog, 95-173 (La.App. 3d Cir. 7/26/95), 663 So.2d 86.
In the instant case Dr. Hoppe testified that his evaluation of Mr. and Mrs. Remson revealed that both were good parents and each was capable of providing a nurturing home for their children. Although he believed that either parent would be a good domiciliary parent, he suggested that the existing custody arrangement be continued because the children recognized Mrs. Remson's house as their home; he saw no overwhelming advantages to switching the primary residence of the children. He did acknowledge his belief that if Mr. Remson's home became the primary residence for the children, they would adjust. However, he stated that he saw no reason to switch residences at this time.
Dr. Hoppe also testified that the custodial schedule he suggested was merely a suggestion and not a recommendation. He also reviewed the following alternating two-week custody schedule proposed by Mr. Remson:
PROPOSED SCHEDULE B
Week 1Mr. Remson would have custody on the following days and Mrs. Remson would have custody at all other times:
1. Monday afternoon from 3:30 until 7:30 p.m.
2. Wednesday from 3:30 until Thursday at 3:30.
3. Friday from 3:30 until Monday at 3:30.
Week 2Mr. Remson would have custody on the following days and Mrs. Remson would have custody at all other times:
1. Wednesday from 3:30 until Friday at 3:30.
Dr. Hoppe stated that although "Schedule B" was not ideal, it was reasonable and "would be a workable schedule if the parties would agree and work together to implement it." Dr. Hoppe emphasized that the parties should share access to the children freely and equally. He further stated, "I don't think you could ask for a more moderate, open-minded, middle of the road position than the position stated by [Mr. Remson] in this case."
When Dr. Hoppe was questioned concerning his opinion of which parent should be designated as the domiciliary parent, he specifically recommended that the court not name a domiciliary parent in this case. He explained that naming one or the other parent as domiciliary parent would cause a perception *413 of a winner and a loser; he opined that this winner/loser dynamic would continue to exist and be played out between the parties to the detriment of the children.
Because Dr. Hoppe's suggested custodial schedule was implemented at the time the parties were ordered to mediate this matter, Mr. and Mrs. Remson had an opportunity to try the schedule prior to testifying at the trial. Mr. Remson and Mrs. Remson agreed that the Friday morning visit did not work well, and Mr. Remson felt that the schedule did not allow him enough quality time with his children. Mr. Remson also testified that he now owns his own home close to the children's school and to Mrs. Remson's home. Mr. Remson also testified that he works out of his home, in his architectural business, which allows him to work his schedule around the children's schedules and activities.
Mrs. Remson testified that she has been the primary caregiver of the children since their birth. She further testified that she works part time as a pharmacist so that she can be home with the children after school. Mrs. Remson also spends time volunteering at the children's school.
The evidence presented in this case reveals two very dedicated and loving parents, both wanting to share their lives with their children. The children are well adjusted and happy and have a close relationship with both of their parents. The parents live close to each other and close to the children's school. Each parent has a flexible work schedule to allow for time with the children. These circumstances are as close to ideal as custody cases come, and we see no compelling reason to deny an equal sharing of physical custody in this case. Although Dr. Hoppe believes that young children do better when they recognize one house as their home, this is a general opinion. Furthermore, Dr. Hoppe conceded that the custodial schedule (B) proposed by Mr. Remson was reasonable and workable. Under these circumstances, we believe the law mandates an equal sharing of physical custody, and we accordingly reverse the trial court's custodial schedule and order that Schedule (B) proposed by Mr. Remson be implemented.
Each party also seeks to be named the domiciliary parent of the children. However, in light of Dr. Hoppe's testimony that this would be detrimental to the children, and his testimony that the parties generally agree on most aspects of the children's upbringing, except custodial issues, we find no manifest error in the trial court's refusal to name a domiciliary parent.
Mr. Remson also appealed the award of child support to Mrs. Remson in the amount of $500.00 per month. In support of his argument Mr. Remson cites the language of LSA-R.S. 9:315 which states that "[t]he party without legal custody or non-domiciliary party shall owe his or her total child support obligation as a money judgment of child support to the custodial or domiciliary party...." Mr. Remson argues that because he is not without legal custody and Mrs. Remson is not the domiciliary parent he does not owe child support under the law. We disagree.
Although the trial court chose not to name a domiciliary parent, Mrs. Remson was, for all practical purposes, the primary custodial parent with all its attendant financial responsibilities. Accordingly, we believe the trial court was within its discretion in awarding Mrs. Remson child support under the custodial plan ordered by the court. Although we are amending the custodial schedule to provide equal physical custody, we nevertheless believe that Mrs. Remson is entitled to child support for the time that she has been the primary custodial parent. Accordingly we will review the amount awarded by the trial court for the time that Mrs. Remson was the primary custodial parent and we will also perform our own calculations for child support under the new custodial plan.
Under the guidelines, there is a rebuttable presumption that the amount of child support determined by the use of the guidelines is the proper amount of child support. LSA-R.S. 9:315.1(A). The court may deviate from the amount determined by the guidelines if the amount so determined is not in the best interest of the child or would be inequitable to the parties. LSA-R.S. 9:315.1(B).
*414 It is uncontested that Mr. Remson's adjusted monthly income is $2500.00 and that Mrs. Remson's adjusted gross income is $3700.00, for a combined adjusted monthly income of $6200.00. Using the Child Support Guidelines, the monthly support obligation is $1261.00 to which private school tuition of $333.00, and medical insurance of $92.00 is added to reach a total monthly child support obligation of $1686.00. Mr. Remson's percentage of $1686.00 is 40%, or $674.40. Mrs. Remson's percentage of 1686.00 is 60%, or $1011.60. After deducting private school tuition of $333.00 per month from Mrs. Remson's child support obligation her remaining support obligation is $678.60. Mr. Remson's child support obligation is reduced by $92.00 per month, for insurance premiums, leaving a total of $582.40. The following calculations represent the respective child support obligations of the parties:

Monthly income of Mrs. Remson $3,700.00 (60% of total monthly support)
Monthly income of Mr. Remson $2,500.00 (40% of total monthly support)
Combined monthly income $6,200.00
Basic guidelines support for 2 children $1,261.00
Health insurance $ 92.00
Private School tuition $ 333.00
Total child support due $1,686.00
Child support due from Mrs. Remson
 ($1,686.00 × 60%) $1,011.60
Less private school tuition $ 333.00
Total due from Mrs. Remson $ 678.60
Child support due from Mr. Remson
 ($1,686.00 × 40%) $ 674.40
Less medical insurance $ 92.00
Total due from Mr. Remson $ 582.40

The trial court deviated from the child support guidelines when it awarded Mrs. Remson $500.00 per month child support. The court reasoned that Mr. Remson was entitled to a reduction in his support obligation from $582.00 to $500.00 per month due to the additional time he had custody of the children.
A court is permitted to deviate from the guidelines in certain circumstances. LSA-R.S. 9:315.8E provides that "[i]n cases of joint custody, the court shall consider the period of time spent by the child with the nondomiciliary party as a basis for adjustment to the amount of child support to be paid during that period of time...." We find no abuse of discretion in this award and accordingly affirm the award of $500.00 per month from date of judicial demand until rendition of this judgment.
For purposes of the modified custody awarded herein we order Mrs. Remson to pay the private school tuition of the children in the amount of $333.00 per month and to pay to Mr. Remson the difference between $678.60 and $582.40, or $96.20 per month in child support. Mr. Remson is ordered to pay $92.00 per month for medical insurance for the children. The parties are further ordered to share any uncovered medical expenses in proportion to their percentage of the basic support as per the child support guidelines.
For the reasons expressed, we affirm the trial court's award of joint custody and amend the trial court's custodial schedule order to the following custodial schedule of alternating two week periods:
Week 1Mr. Remson will have custody on the following days and Mrs. Remson would have custody at all other times:
1. Monday afternoon from 3:30 p.m. until 7:30 p.m.
2. Wednesday from 3:30 p.m. until Thursday at 3:30 p.m.
3. Friday from 3:30 p.m. until Monday at 3:30 p.m.

*415 Week 2Mr. Remson would have custody on the following days and Mrs. Remson would have custody at all other times:
1. Wednesday from 3:30 p.m. until Friday at 3:30 p.m.
We affirm the trial court's equal division of holidays and its order for co-domiciliary status of the parties. We further affirm the court's order for child support to Mrs. Remson in the amount of $500.00 from date of judicial demand until rendition of this judgment. At the time this judgment is rendered, Mrs. Remson is ordered to pay the private school tuition of the children in the amount of $333.00 per month and pay to Mr. Remson $96.20 per month in child support. Mr. Remson is ordered to pay $92.00 per month for medical insurance for the children. The parties are further ordered to share any uncovered medical expenses in proportion to their percentage of the basic support as per the child support guidelines.
AFFIRMED AS AMENDED.
NOTES
[1] Judge Thomas W. Tanner, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Pursuant to an ex parte order, Mrs. Remson was awarded temporary care, custody and control of the minor children subject to reasonable visitation during the pendency of these proceedings.
[3] By Acts 1993, No. 905, § 1, Civil Code Article 131(D) was amended and reenacted to require that in cases of joint custody the parties are to share equally in physical custody, to the extent feasible.