J^FOIL, J.
This appeal is brought by defendant Hil-lery Piere (Pete) Firmin, III, from judgments denying his request to modify a joint custody plan and his motion for new trial. For the reasons expressed, we affirm.
PROCEDURAL BACKGROUND
The parties were married in 1983, and four children were subsequently born during the marriage: Rae Anne (1987), Pete Joseph (1989), Rachel Angelica (1991) and John Piere (1995). Plaintiff, Judy Guarino Firmin, filed a petition for divorce in May, 1998. A judgment of divorce was ultimately rendered in August, 1998, awarding the parties joint custody of the children subject to the conditions set forth in an annexed Joint Custody Plan. The Joint Custody Plan, as stipulated by the parties, provided that Mrs. Firmin .would be the primary domiciliary parent, subject to Mr. Firmin’s “alternative custodial rights” specified in the plan; essentially, Mr. Fir-min’s visitation rights included having the children every other weekend and sharing holidays equally. The parties simultaneously settled the community property issues as reflected in a Stipulated Judgment of Partition signed by the court in August, 1998.
In April, 1999, Mr. Firmin filed a Motion to Alter Child Custody Arrangement seeking a modification which would permit him to share the children’s time equally with their mother. A limited hearing was held in June, 1999, after which the court ordered the parties to share equal custody of the children during the summer of 1999.
The matter proceeded to trial in October, 1999. At the close of testimony, the court took the matter under advisement, then denied Mr. Firmin’s request for a change in the custody plan. Mr. Firmin *932 filed a motion for new trial, which was denied after a hearing held January 11, 2000. At that time, Mr. Firmin requested clarification of the judgment regarding summer visitation. The court signed an amended judgment indicating that the equal custody arrangement for the summer months was to be permanent.
Mr. Firmin now appeals the denial of his motion to alter the child custody arrangement and of his motion for new trial.
DISCUSSION
The party seeking modification of a stipulated custody decree has the burden of proving a change in circumstances materially affecting the welfare of the children and that the proposed change would be in the best interest of the children. Ledford v. Ledford, 98-0877 (La.App. 1st Cir.12/22/94), 648 So.2d 1060, 1063, writ denied, 95-0223 (La.3/17/95), 651 So.2d 278. The trial court is vested with vast discretion in matters of child custody and visitation, and its determination is entitled to great weight and will not be disturbed on appeal unless a clear showing of abuse of its discretion is made. Remson v. Remson, 95-1951 (La.App. 1st Cir.4/4/96), 672 So.2d 409, 411.
|sLa. R.S. 9:335 provides in pertinent part as follows:
A. (1) In a proceeding in which joint custody is decreed, the court shall render a joint custody implementation order except for good cause shown.
(2)(a) The implementation order shall allocate the time periods during which each parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents.
(b) To the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally.
While the best interest of the child remains the paramount concern in making custody determinations, that interest must be balanced with a parent’s right to share equally the physical custody of the child where feasible. Remson, 672 So.2d at 412.
Mr. Firmin testified at trial that he was “distraught” about the divorce and agreed to the custody plan because he did not believe he was prepared to be a good father at the time of the divorce; he also stated that he promised Mrs. Firmin he would let her have the children if she would be flexible on the property settlement and leave his construction company intact. Since the, divorce, Mr. Firmin has entered into counseling and feels that he has bettered his parenting and anger management skills, and that he no longer has a problem with alcohol. Also since the divorce, Mr. Firmin has become more involved with the children’s regular activities; he has gone on field trips, regularly attended sporting events, periodically had lunch with the children at school, and made himself available to pick them up if they got sick at school.
During the separation, Mr. Firmin moved out of the family home, but moved back there after the divorce. His home, where the children all have their original rooms and furnishings, is some four miles from Mrs. Firmin’s house and approximately three miles from the children’s school. Mr. Firmin stated that, if granted equal custody, he could manage his construction business from his home office so that he could be there when the children returned from school, and that he could arrange for his parents to watch the children when he is out on business.
The testimony of Dr. Alan Taylor (a clinical psychologist) and Ms. Leslie Todd (a clinical social worker) from the June, 1999 hearing was admitted into the record without objection. Ms. Todd worked with both Mr. and Mrs. Firmin prior to the divorce and then again with Mr. Firmin after the divorce. Ms. Todd stated that Mr. Firmin worked diligently on managing his anger and controlling his drinking, as well as on developing a better routine with the children; she opined that Mr. Firmin *933 could handle an equal custody arrangement. Dr. Taylor also saw both parents before the divorce and Mr. Firmin more recently. He stated his opinion that Mr. Firmin has “matured” since the divorce and is well capable of functioning in a parenting role; Dr. Taylor had “no qualms” about Mr. Firmin’s ability to handle equal custody of the children.
|4Pr. Mary Lou Kelly, a psychologist who testified at the October trial, had worked with both parents and was the only expert who had seen the children. She testified that Mr. Firmin’s parenting had shown significant improvement since the divorce and that he was very involved in the children’s activities. She stated that both parents have made a concerted effort to agree on matters pertaining to the children and have tried to abide by the stipulation that they foster respect among the children for the other parent. She further observed that Mrs. Firmin has been “very flexible” in allowing Mr. Firmin more time with the children than was called for in the stipulated plan, particularly as his behavior has improved, and that this practice would probably continue if equal custody is denied Mr. Firmin. Although she did not do a formal custody evaluation, she stated that she saw no reason to deny Mr. Firmin equal custody.
Mrs. Firmin testified that she has always been the children’s primary caregiver, and stated her belief that the children’s interest would best be served by leaving the existing plan in place. . She testified that she has completed her cosmetology course, which she pursued in part because of the flexible work arrangements possible with such a career. At the time of the hearing, she was considering job possibilities but did not know when she would begin working. She stated that she had been and would continue to be flexible about the children spending extra time with their father.
Dr. Kelly opined that the children are “happy and well-adjusted kids, overall” and the children and their parents had been working well under the stipulated plan prior to the instant litigation. She observed that the “primary negative” to an equal sharing arrangement was the resistance of the oldest daughter (Rae Anne, aged twelve) to spending significantly more time with her father. This resistance, Dr. Kelly testified, stemmed from the fact that Mr. Firmin was “rather disengaged from the children” during the marriage. Dr. Kelly noted, however, that Mr. Firmin has continued counseling with his oldest daughter, and that Rae Anne admits her relationship with her father has improved substantially. Dr. Kelly stated that it was important to foster the relationship between father and daughter, because fathers have significant influence over how girls think about themselves as women as well as over their academic and career pursuits; she further testified that she has observed, and discussed with Mr. Firmin, behaviors which might indicate disrespect of women.
The children’s maternal grandmother, Mrs. Artima R. Gurarino, testified that Mr. Firmin seemed to be trying to become closer to the children, including Rae Anne, since the divorce. Nevertheless, she related an incident in which she observed Mr. Firmin corporally punish Rae Anne but not her brother, Pete, Jr., who was also involved in the incident. Rae Anne’s godmother testified that Rae Anne is concerned about the possibility of an equal custody arrangement and does not want it to happen.
1 ¡¡There was testimony to the effect that Pete, Jr., aged ten, wants to spend more time with his father. Dr. Kelly noted that young Pete is a “handful” over whom his father has better control than his mother. She opined that Pete Jr. needs a substantial amount of time with his father, but stated that Mrs. Firmin has allowed Pete more time with his father than called for in the stipulated plan. Mr. Firmin stated that Mrs. Firmin agreed to let Pete stay with him on Thursday nights regularly during the school year (in anticipation of *934 school tests on Fridays) and cited other instances in which Mrs. Firmin voluntarily allowed Pete extra time with his father.
Regarding the two younger children, Rachel (aged eight) and John (aged four), Dr. Kelly stated that both parents need to be involved in working on these relationships during the coming years. The children’s maternal grandfather testified that, recently, Rachel has been upset when she has had to leave her mother. Mrs. Firmin stated that Rachel had been calling her in tears from Mr. Firmin’s house during the time immediately preceding the hearing; Mrs. Firmin believed that Rachel was upset, not about staying the weekend, but about the possibility of a more prolonged arrangement. Mr. Firmin confirmed that Rachel was sometimes upset at the beginning of a weekend visitation, but that she was fine the next day. Mrs. Firmin testified that she frequently agreed to let John go with Pete to their father’s house for extra visitation on Thursday nights, unless John did not want to go.
Mr. Firmin testified that the equal custody arrangement in effect for the summer of 1999 worked well. Mrs. Firmin stated that she had no communication problems with Mr. Firmin or the children during the summer.
By his first two assignments of error, Mr. Firmin urges that the trial court erred in failing to balance the best interests of the children with his right to share physical custody equally and failing to find that equal custody would be in the children’s best interest. Mr. Firmin insists that the instant case is controlled by Remson, wherein this Court ordered an equal custody arrangement upon finding that both parents were “very dedicated and loving,” the children were well adjusted and enjoyed a close relationship with both parents, the parents lived close to each other and to the children’s school, and the parents both had flexible work schedules. Remson, 672 So.2d at 413. However, each child custody case must be viewed in light of its own particular set of facts and circumstances with the paramount goal of reaching a decision which is in the best interest of the children. Remson, 672 So.2d at 411. Furthermore, as we noted in Gill v. Dufrene, 97-0777 (La.App. 1st Cir.12/29/97), 706 So.2d 518, 521 n. 2, because the best interest of the child is paramount in a custody determination, it is given greater weight in the balancing of interests.
The close proximity of the parents’ respective homes to each other and to the children’s school lessens any practical impediment to the parties’ sharing equal custody. Further, Mr. Firmin is to be commended for the serious efforts he |g(Jias made to improve his parenting skills. His burden in this matter, however, was to show not only a change of circumstances materially affecting the welfare of the children, but also that the proposed change would be in the children’s best interest. Ledford, 648 So.2d at 1063. The record herein supports the trial court’s conclusion that a change in the custody plan would not be in the children’s best interest. We thus find no abuse in the trial court’s ruling denying equal custody and no merit in Mr. Firmin’s first two assignments of error.
We are likewise unpersuaded by Mr. Firmin’s third assignment of error, in which he urges, in the alternative, that the trial court erred in failing to award him “frequent and continuing contact” with the children as mandated by La. R.S. 9:335 A(2)(a). First, we observe that the existing custody plan is one to which Mr. Fir-min himself agreed and to which has been added additional time with the children during the summer months. We further note the trial court’s observation in written reasons for judgment that the children have adjusted well to the current arrangement and have “achieved a measure of stability,” and its reluctance to change the arrangement “just when it is beginning to work.” It is well settled that stability of environment is a factor to be taken into *935 account in determining what is in the best interest of the children. Rogers v. Rogers, 577 So.2d 761, 768 (La.App. 1st Cir.1991). This assignment is without merit.
Mr. Firmin’s fourth and fifth assignments challenge the trial court’s refusal to grant him additional time with the three younger children. However, as previously observed, the record supports the trial court’s conclusion that the children’s best interest would be served by leaving the existing plan in place and allowing it to work. Further, we note Mrs. Firmin’s testimony that she intends to continue allowing the children to spend extra time with their father. Under the circumstances presented here, we find no abuse of the trial court’s wide discretion in declining to modify the stipulated custody plan. These assignments lack merit.
Finally, in his sixth assignment of error, Mr. Firmin urges that the trial court erred in failing to reduce his child support during the summer months when he has the children fifty percent of the time. The record evidence pertaining to child support was not well developed. There is evidence that Mr. Firmin’s business income had recently declined, but he anticipated being able to change that circumstance. Further, Mrs. Firmin testified that her expenses could be expected to decrease only negligibly if the children spent more time with their father. Based upon the record before us, we find no merit in this assignment.
For the foregoing reasons, the judgment of the trial court maintaining the Joint Custody Plan, as amended to permit equal custody during the summer, and the judgment denying Mr. Firmin’s motion for new trial hereby are affirmed. Costs of the appeal are assessed against Hillery Piere (Pete) Firmin, III.
AFFIRMED.