1 .SUSAN M. CHEHARDY, Judge.
This is an appeal of a judgment that changed domiciliary custody of a child from his father to his mother and ordered the father to pay child support. The father seeks reversal. We affirm.
Evan Shambley was born to Jason F. Shambley and Kathryn L. Holmes on January 31, 1995.[1] Jason and Kathryn were not married; Jason was 17 and Kathryn 16 when Evan was -born. The parties resided together in Mississippi from approximately November 1995 until early in 1998, when Kathryn left with Evan and went to Tennessee to stay with relatives. Shortly thereafter Jason moved to Louisiana to live with his parents in Harahan, Jefferson Parish.
In September 1998 Kathryn and the child moved to Jefferson Parish, Louisiana, where they resided with Jason at his parents’ home. In November 1998, Kathryn left Evan with Jason and relocated to Texas for a job. In 1999 she moved from Texas to Oklahoma. She indicated to Jason that she intended to obtain custody of Evan in order to take the child with her to Oklahoma.
|oOn June 4, 1999 Jason filed a Petition for Determination of Custody in the 24th Judicial District Court, Jefferson Parish. On June 19, 1999 Jason allowed Kathryn’s father (Evan’s maternal grandfather) to take the child for a visit. Evan ended up with his mother in Oklahoma. Evan continued to reside with his mother through the proceedings that followed.
On February 18, 2000 Kathryn countered with a Reconventional Demand for Sole Custody and Child Support. On April 26, 2000 the parties entered into a Consent Judgment on child support, under which Jason was to pay Kathryn child support in the amount of $450.00 per month, retroactive child support in the amount of $800.00, and was to be responsible for 61% of any uncovered, extraordinary medical expenses of the child.
The issue of custody was tried on January 19, 2001. Although the judge ruled from the bench, a written judgment was not rendered until March 20, 2001. The trial court found it was in the best interest of the child that the parties share joint custody, with the father being named as domiciliary parent. The judgment ordered that the parents freely communicate with each other and provide the other party with copies of all information pertaining to the child. Further, the judgment stated that Evan was to remain in his present placement (with his mother, who by that time was living in Tennessee) until the end of the current school year. The judgment made provisions for return of Evan to his father after the school year ended, for visitation by the mother during the sum- • mer, and for visitation by the father pending the end of the school year, and for visitation by the mother subsequent to the summer of 2001.
*24 Kathryn filed an appeal of the custody judgment. The record was lodged in the court on July 23, 2001, but the appeal was dismissed on December 5, 2001, for failure of the appellant to file a brief. Shambley v. Holmes, 01-CA-823 (La.App. 5 Cir. 12/5/01) (unpublished-order).[2]
While the appeal of the March 2001 judgment was pending, on July 27, 2001 Kathryn filed a Petition for Designation as Domiciliary Parent. Jason reconvened, seeking child support from Kathryn as a result of his being named domiciliary parent in the March 2001 judgment.
After a trial on September 19, 2001, the trial court granted Kathryn’s petition. The judgment, signed on October 19, 2001, decreed that the parties share joint custody and designated Kathryn as the domiciliary parent. Like the March 2001 judgment, it ordered that both parents freely communicate with and provide each other with copies of all information pertinent to the child, and set out a visitation schedule.
In addition, the October 2001 judgment ordered the parties to divide evenly the costs and travel time for visitation, directed that the child and the parents have unlimited telephone access to each other, and ordered Jason to pay Kathryn child support in the amount of $450.00 per month, “pursuant to the consent judgment of April 26, 2000.” Finally, the judgment decreed that Jason be responsible for 61% of any uncovered extraordinary medical expenses.
| sIn the Reasons for Judgment, the trial court set out the essential facts succinctly. Accordingly, we adopt the facts as stated therein:
This matter came before the Court on the Petition for Designation as Domiciliary Parent filed on behalf of Kathryn L. Holmes (now Luddeke). The Court previously rendered a considered decree, awarding joint custody of the minor child, Evan Shambley, to the parties. The father, Jason Shambley, was designated as the domiciliary parent. Jason is domiciled in Harahan, Louisiana. Kathryn is domiciled in Jackson, Tennessee. The Court heard testimony from both parties, who each accuse each other of a failure to communicate with the other with regard to the minor child. Jason alleges that Kathryn has failed to provide appropriate information regarding Evan’s medical and educational needs. Kathryn gives the excuse that Jason “didn’t ask for it.” Kathryn alleges that Jason refuses to give her information regarding Evan’s education, speech and hearing therapy or treatment, and his insurance coverage. Kathryn further alleges that Jason has failed to meet the visitation schedule by failing to deliver the child to the arranged meeting place in Wynona, Mississippi and/or failing to advise her that he would not be at the meeting place as scheduled. Kathryn relates an incident where she drove to Jason’s home in Harahan after he failed to arrive in Wy-nona as scheduled. She was concerned that Evan and Jason had been in an accident or encountered some other difficulty. After arriving at Jason’s residence, she and her husband, Chey Lud-deke, began knocking on the door of the residence at about 7:00 am, but got no *25 response until Jason’s father came to the door hours later, threatening them to get off the property. Jason eventually exited the house and advised Kathryn that Evan was camping with Jason’s sister. Jason admits that the camping information was not true, and that Evan was in the house. His explanation is that it was not her weekend. He admits that his actions were not proper. Kathryn alleges that during a three week visitation she had with Evan, Jason did not call to speak with him. Jason responds that he attempts to call, but gets no answer or he gets voice mail. Evan has a problem with his speech for which he was being treated in Jackson[,] Tennessee. Kathryn is concerned that Evan has regressed in his speech since being transferred to the custody of Jason. Kathryn’s mother, grandmother and hsuband[husband] each testified that Evan has regressed. Jason [fiand his mother deny any regression in Evan’s speech. Jason admits that it took an extended period of time to have Evan placed in speech therapy when Evan began residing with him, but he states that the delay was a result of Kathryn’s failure to provide the information he requested. Jason states that he works 8 or 9 hours a day, and attends school from 6:00 pm to 9:00 pm on Tuesdays and Thursdays. Jason lives in a three bedroom home with his mother, father, sister, and her child. Jason’s sister and mother assist him in caring for Evan. Kathryn lives in a two bedroom duplex with her husband Chey and her infant daughter, Hayden. She is not presently employed. She is currently enrolled in college. She testified that she and her husband work their schedules around the children. She further testified that Evan has a loving relationship with his baby sister. If Evan lived with her he could maintain this relationship. She would also be able to follow through with his speech therapy and with the surgery (tubes in ears) which has been recommended for Evan. Beth Fisher, Kathryn’s mother,-testified that Kathryn has been very actively involved in Evan’s speech therapy, -school and extracurricular activities. She also testified that Evan loves his-little sister. She stated that Evan’s speech has regressed since he has been in Jason’s care. Alma Reid, Kathryn’s grandmother testified that she [saw] Kathryn and Evan almost every day when Evan was living with Kathryn. Evan’s speech was improving and Kathryn was working with him every day. Evan’s speech is now “going back” since he began living with Jason.
The Court reviewed the deposition and the report of Robert W. Kennon, Ph.D., a board certified psychologist and forensic examiner, who tested and evaluated Kathryn and the minor child Evan. With regard to Kathryn, he reports that the comprehensive psychological testing indicates that she would be capable of serving as the primary custodial parent. The “objective testing with built in measures of deception, did not reveal duplicity” as reported by Virginia Lee Hoffman. Ms. Hoffman, a- social worker, performed no psychological testing, basing her opinions solely on her interview with Kathryn. Dr. Kennon also reports that his testing and interview of Kathryn indicate that she is willing to support Evan’s relationship with Jason. Based upon his testing and evaluation of Evan, Dr. Kennon reports that Evan displays equal love, affection and emotional ties to both parents; however, he clearly 17displays a strong desire to reside with his mother and his new family unit. Evan exhibits a bonding with his new baby sister. Dr. Kennon expresses *26 concern that separating Evan from his sister may promote emotional difficulties and cause Evan to feel that he is being replaced.
The Court also reviewed the deposition of Della Judith Mae Cooper, a speech therapist for the Jackson County School System. Ms. Cooper has an undergraduate degree in communicative disorders. She has a graduate degree in special education, and 45 hours of post-masters courses. She has worked as a speech therapist for twenty-seven years. In her deposition she relates her work with Evan regarding his speech problem, an articulation disorder. She discusses Kathryn’s involvement in the process, and the need for daily reinforcement. She has had much communication with Kathryn and believes that Kathryn is very involved. She further states that Kathryn was going above and beyond her parenting duty.
Counsel for Jason Shambley argues that applying the Bergeron test, the Court should not change the domiciliary designation of the child. Bergeron v. Bergeron, 492 So.2d 1193 (La.1986). She argues that Bergeron places the heavy burden on the party seeking the change of proving that the present custody is so harmful or deleterious to the child as to justify the change. This Court’s reading of Bergeron indicates that counsel for Jason Shambley is only partially correct in her argument. In Bergeron, the Louisiana Supreme Court recognized “that in a narrow class of cases a modification of custody may be in the child’s best interest even though the moving party is unable to show that the present custody is deleterious to the child.” The Court restated the burden of proof rule to allow for such cases. The Court stated that a change in custody would be appropriate if the party seeking the change proves “by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child.” This Court has no doubt that both parents love this child, and want this child in their physical custody. Unfortunately, we cannot divide this child in such a way as to satisfy both parents. This Court’s concerns are further complicated by the fact that the parties reside at such a great distance [from] each other, and the aforementioned failure of both |sparties to communicate properly with regard to the child. This child needs and wants the love and care of both of his parents. There was no evidence sufficient to establish that continuing the child in Jason Shambley’s physical custody (his designation as the domiciliary parent) would be so deleterious to the child as to justify a modification; however!,] the Court is of the opinion that Kathryn L. Holmes Luddeke has provided clear and convincing evidence that any harm which would result from the modification is substantially outweighed, by the advantages to the child. The Court will render judgment by which the parties will have joint custody of the minor child Evan Sham-bley. The judgment shall further designate Kathryn L. Holmes Luddeke as the domiciliary parent; and, the visitation schedule now in place shall reverse to the benefit of Jason F. Shambley.
Jason appeals, asserting (1) the trial court erred in determining that there had been a material change in circumstances since the March 20, 2001 custody judgment, in changing domiciliary parent designation from Jason to Kathryn, and in modifying physical custody when Kathryn had only sought a modification of domiciliary parent designation; and (2) the trial court erred in awarding Kathryn child sup *27 port which she had not asked for and about which no evidence was presented.
In response, Kathryn asserts the court properly found that material changes in circumstances occurred between January 2001 and July 2001; properly found it was in Evan’s best interest to have Kathryn designated as his domiciliary parent; properly changed physical custody to Kathryn, pursuant to her request; and properly granted child support to the mother. Alternatively, if this Court determines the child support award was improper, she argues that reimbursement is not an appropriate remedy.
The court shall award custody of a child in accordance with the best interest of the child. La.C.C. art. 131.
|fl“The best interest principle recognizes the child’s substantive right to the custodianship that best promotes his welfare.” Bergeron v. Bergeron, 492 So.2d 1193, 1196(La.1986). The “best interest of the child” principle is the principal substantive criterion for granting and changing custody. Id., 492 So.2d at 1197.
In Bergeron, our' supreme court expressed the burden of proof rule for changing custody as follows:
When a trial court has made a considered decree of permanent custody the party seeking a change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child.
492 So.2d at 1200.
Here, the trial court relied on the second part of the Bergeron rule, that is, “proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child.” Id. The trial court stated specifically,
There was no evidence sufficient to establish that continuing the child in Jason Shambley’s physical custody ... would be so deleterious ... as to justify a modification; however, the Court is of the opinion that Kathryn L. Holmes Luddeke has provided clear and convincing evidence that any harm which would result from the modification is substantially outweighed by the advantages to the child.
When joint custody is decreed, the court shall render a joint custody implementation order except for good cause shown. La.R.S. 9:335(A)(1). The implementation order shall allocate the time periods during which each parent shall have physical custody' of the child so that the child is assured of frequent and |incontinuing contact with both parents. La.R.S. 9:335(A)(2)(a). To the extent feasible, physical custody should be shared equally. La.R.S. 9:335(A)(2)(b). In a joint custody decree the court shall designate a domiciliary parent. La.R.S. 9:335(B)(1). “The domiciliary parent is the parent with whom the child shall primarily reside, but the other parent shall have physical custody during time periods that assure that the child has frequent and continuing contact with both parents.” La.R.S. 9:335(B)(2). The domiciliary parent has authority to make all decisions affecting the child. La. R.S. 9:335(B)(3).
The trial court is given vast discretion in custody matters, and its custody determination is entitled to great weight and will not be disturbed on appeal absent abuse of that discretion. DeGeorge v. Gilley, 97-387 (La.App. 5 Cir. 10/28/97), 701 So.2d 1079, 1083.
*28 “[T]he best interest of the child remains the paramount concern in making custody determinations; however, that interest must be balanced with a parent’s right to equally share the physical custody of the child where feasible.” DeGeorge, 701 So.2d at 1083, quoting Remson v. Remson, 95-1951 (La.App. 1 Cir. 4/4/96), 672 So.2d 409 at 412. Nevertheless, where equal sharing of physical custody is not feasible due to distance between thfe parents’ homes, the trial court does not abuse its discretion in granting a greater amount of physical custody to the domiciliary parent. DeGeorge, supra. See also, Evans v. Lungrin, 97-541 (La.2/6/98), 708 So.2d 731, 739.
Reviewing the testimony from both the September 2001 and the prior custody hearing in January 2001, we cannot say the trial court either was clearly wrong or abused its discretion in its determinations. Contrary to Jason’s argument l^on appeal, the trial court was not required to find a material change of circumstances, but rather was, bound by the Bergeron rule enunciated above. The court carefully delineated its reasons for finding that Evan’s best interest would be served by changing domiciliary custody to his mother and that the advantages to him would outweigh any harm likely to be caused by the change of environment. We find no manifest error in that conclusion.
Further, the changes in physical custody are necessitated by the distance between the parents’ homes. See DeGeorge, supra. Hence, the court did not err in making that change.
Finally, we find no error in the child support award. . In fact, as noted earlier in this decision, the parties reached a consent judgment in April 2000, regarding child support. Jason’s Reconventional Demand for Child Support was before the court at the same time as Kathryn’s Petition for Designation as Domiciliary Parent. In effect, by restating the child support terms already in effect under the prior consent judgment, the trial court was denying Jason’s request for child support. Since Kathryn now is the domiciliary parent, as well as having no separate income of her own because she does not work outside the home, she is entitled to child support. The court’s inclusion of child support in the judgment was not a new award; it simply left undisturbed the terms previously agreed by the parties at a time when Evan was living with his mother.
For the foregoing reasons, therefore, the judgment is affirmed. Each party is to pay his or her own costs for this appeal.

AFFIRMED.

. Kathryn Holmes married in 1999 and her name now is Kathryn Holmes Luddeke. Jason’s original petition for custody, which initiated this suit, misspelled Holmes’ first name as "Katherine” rather than "Kathryn.”

. Apparently Kathryn elected not to file a brief because by the time her appeal was lodged, her proceeding to be designated domiciliary parent had been initiated. Kathryn obtained several extensions of time within which to file her brief in the first appeal, with the final due date being October 24, 2001. By that time, however, Kathryn had obtained a favorable outcome in the proceedings now on appeal. We deduce she then considered the first appeal moot.