834 So.2d 1272 (2002)
Janie Lynne DUPRE
v.
Timothy Anthony DUPRE.
No. 02-0902.
Court of Appeal of Louisiana, Third Circuit.
December 30, 2002.
*1274 J. Nolan Sandoz, Attorney at Law, Lafayette, LA, for State of LA. Dept. of Social Serv., Off. of Support Enforce.
Jeffery L. Brunson, Attorney at Law, Lafayette, LA, for State of LA. Dept. of Social Serv., Off. of Support Enforce.
Cynthia Carrie LeBourgeois, Attorney at Law, Lafayette, LA, for Janie Lynne Dupre.
Sandra Ann Broussard, Attorney at Law, Lafayette, LA, for State of LA. Dept. of Social Serv., Off. of Support Enforce.
Helen Joane Popich, Attorney at Law, Lafayette, LA, for Timothy Anthony Dupre.
John Clay Lejeune, Attorney at Law, Lafayette, LA, for State of LA. Dept. of Social Serv., Off. of Support Enforce.
Jessica Chatelain, In Proper Person, Carenco, LA, for Jessica Chatelain.
Charles Chatelain, In Proper Person, Carenco, LA, for Charles Chatelain.
Court composed of JOHN D. SAUNDERS, BILLIE COLOMBARO WOODARD, and MARC T. AMY, Judges.
SAUNDERS, Judge.
Timothy Anthony Dupre appeals the trial court's ordered visitation schedule and its change from a "seven and seven" physical sharing to every other weekend, and claims the trial court erred in awarding *1275 visitation rights for the daughter, Victoria Dupre, to her biological paternal grandmother and her husband. For the reasons outlined below, we affirm the trial courts visitation schedule, and its grant of visitation rights to the grandparents.

FACTUAL AND PROCEDURAL BACKGROUND
On July 17, 1992, Janie Bozant married Jason Lormand. On April 11, 1994, Janie and Jason were divorced. The next day, April 12, 1994, Janie married Timothy Dupre. At the time of her marriage to Timothy, Janie was pregnant with Victoria Dupre, their biological daughter, who was born three days after the marriage of Janie and Timothy, on April 15, 1994. On April 3, 1997, a Joint Custody and Child Support Plan between Janie and Jason was approved by the Fifteenth Judicial District for the Parish of Lafayette. In that Custody plan, Jason received physical custody of Victoria every other weekend, on alternating holidays, and every Father's Day.
Janie gave birth to a second child, Tyler Dupre, on April 18, 1997. Timothy is Tyler Dupre's biological father. On December 1, 2000, Janie filed for divorce from Timothy. The couple entered into a Consent Judgment and Custody Plan on December 4, 2000. This custody plan referred only to Tyler Dupre, and stated that Tyler Dupre was the only child born of the marriage between Janie and Timothy. This Consent Judgment granted Timothy visitation on alternating weekends, alternating holidays, and every Father's Day. In addition, on weeks preceding Timothy's scheduled visitation weekends he also received visitation on Tuesday and Wednesday; on weeks not preceding his scheduled weekend visitations he received visitation on Tuesday, Wednesday, and Thursday. On December 7, 2000, Janie and Timothy entered into an agreement entitled "Grant of Visitation" affording Timothy the same visitation schedule with Victoria that he had with Tyler, with the exception of weekends when Victoria was scheduled to visit with her paternal grandmother Mrs. Chatelain.
In 1998, Jason Lormand was convicted of murder and is now serving a life sentence, without the benefit of probation or parole, for that conviction. On January 9, 2001, Jessica Chatelain filed a Petition for Intervention seeking a court ordered grant of visitation with Victoria. On April 20, 2001, Janie filed "Rule to Change Custody" against Timothy seeking a visitation schedule granting Timothy visitation every other weekend, and one evening a week. On May 25, 2001, Timothy filed a Answer and Reconventional Demand, which now listed Victoria as a child of the marriage between Janie and Timothy, and sought a formal custody plan with Victoria.
An Interim Consent Judgment was signed, pursuant to a Hearing Officer Conference held on May 30, 2001, recommending a "seven and seven" visitation schedule until the Rule seeking the change in visitation came before a trial judge. At the time of this Interim Consent Judgment, the merit hearing was scheduled for August, 2001. Due to a number of substitutions of legal counsel, and the appointment of an evaluator, the merit hearing was delayed from August until January of 2002. On October 24, 2001, Janie and Jason entered into a Consent Judgment agreeing that Janie and Jessica should share joint custody of Victoria Dupre. On December 28, 2001, Timothy filed a Supplemental and Amending Answer and Reconventional Demand seeking a "seven and seven" physical custody judgment.
The hearing on the merits was held January 24 and 25, 2002, and the trial *1276 court set forth written reasons for judgment on February 13 and 20, 2002. In the court's reasons for judgment it awarded Timothy Dupre physical custody of Victoria and Tyler every other weekend from the close of school on Thursday until Monday morning when school opened. Additionally, the court awarded Timothy physical custody every Wednesday evening from 5:00pm until 8:00pm. The court also awarded Mr. Dupre two-thirds (2/3) of the summer vacation period, subject to the alternating weekend visitation of Mrs. Chatelain. Additionally, the court awarded Mr. Dupre at least one-half (1/2) of the major holidays.
As to grandparent visitation, the trial court awarded the Chatelains visitation with Victoria one weekend per month from 9:00am Saturday until 5:00pm. The court also specified that this visitation with the Chatelains is not to interfere with Timothy's visitation periods.

DISCUSSION
We begin our analysis with a brief review of the well established rules of appellate review of trial court decisions. An appellate court may not set aside a trial court's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Rosell v. ESCO, 549 So.2d 840 (La.1989). "However, where one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable and, if the record is otherwise complete, the appellate court should make its own independent de novo review of the record." Evans v. Lungrin, 97-0541, pp. 7-8 (La.2/6/98); 708 So.2d 731, 735. A legal error occurs when the trial court incorrectly applies principles of law and those errors are prejudicial. Id. There is no evidence of such legal error on the part of the trial court in the present case; therefore, we conduct only a manifest error review of the trial court's ruling.
The determination of the trial court in establishing or modifying custody is entitled to great weight and will not be disturbed by an appellate court absent a clear showing of abuse of discretion. Thompson v. Thompson, 532 So.2d 101 (La.1988); Hawthorne v. Hawthorne, 96-89 (La.App. 3 Cir. 5/22/96); 676 So.2d 619, writ denied, 96-1650 (La.10/25/96); 681 So.2d 365. "Because of the tribunal's better opportunity to evaluate witnesses, and taking into account the proper allocation of trial and appellate functions, great deference is accorded to the decision of the court." McKinley v. McKinley, 25,365, p. 5 (La.App. 2 Cir. 1/19/94); 631 So.2d 45, 48. This great discretion and deference granted to the fact finder on appellate review extends to its assessment of expert testimony. Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106 (La.1990).
"In a proceeding for divorce, the court shall award custody of a child in accordance with the best interests of the child." La.Civ.Code art. 131. The legislature has clearly demonstrated their preference for joint custody in La.Civ.Code art. 132, which states, "[i]n the absence of agreement, or if the agreement is not in the best interest of the child, the court shall award custody to the parents jointly." Guidance for the determination of the physical custody allocation after an award of joint custody is provided by La.R.S. 9:335, which states in pertinent part:
A. (2)(a) The implementation order shall allocate the time periods during which each parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents.

(b) To the extent it is feasible and in the best interest of the child, physical *1277 custody of the children should be shared equally.
...
B. (2) The domiciliary parent is the parent with whom the child shall primarily reside, but the other parent shall have physical custody during time periods that assure that the child has frequent and continuing contact with both parents.
(emphasis added).

Modification of Physical Custody Schedule
In Mr. Dupre's first issue on appeal, he alleges that the trial court erred when it changed his physical custody schedule from the "seven and seven" schedule established by the Hearing Officer in July of 2001. Mr. Dupre relies on a number of outdated cases for his contention that joint custody agreements favor an equal sharing of physical custody. Based on this argument, Mr. Dupre alleges that the trial court erred in changing his physical custody from the "seven and seven" plan to alternating weekends and every Wednesday afternoon.
Mr. Dupre's reliance on Remson v. Remson, 95-1951 (La.App. 1 Cir. 4/4/96); 672 So.2d 409, and Bynog v. Bynog, 95-173 (La.App. 3 Cir. 7/26/95); 663 So.2d 86, in support for his contention that the "seven and seven" custody arrangement should not be changed is misplaced, however, as these cases were decided using the prior version of La.R.S. 9:335, which was enacted in 1993 and revised in 1995. Most significantly, before the 1995 amendment, La.R.S. 9:335(A)(2)(b) read: "To the extent it is feasible, physical custody of the children shall be shared equally." After the 1995 revision, this section reads, "To the extent it is feasible and in the best interest of the child, physical custody of the children should, be shared equally." The Louisiana Supreme Court addressed the impact of these revisions on the establishment of physical custody plans in Evans. "[T]he trial court's application of the express mandate of the prior article 131 that to the extent feasible, physical custody of the children shall be shared equally, and the trial court's determination that `joint custody with equal time for each parent is presumed to be in the best interest of the child,' is legal error." (emphasis in original) Evans, 708 So.2d at 736.
The Supreme Court's holding clearly illustrates that the 1995 revision of 9:335(A)(2)(b) "changed the law from a mandate of equal sharing of the physical custody in a joint custody situation to a recommendation of equal sharing of the physical custody of a child that is subject to the requirement that such an arrangement be `feasible' and `in the best interest of the child.'" (emphasis in original) Stephens v. Stephens, 02-402, p. 7 (La.App. 1 Cir. 6/21/02); 822 So.2d 770, 776. As a result of this shift in emphasis on the evaluation of physical custody, recent jurisprudence states that "joint custody does not mandate a fifty-fifty sharing of physical custody." Brown v. Brown, 96-743, p. 3 (La.App. 3 Cir. 2/26/97); 692 So.2d 458, 459-60.
Although Mr. Dupre acknowledges these legislative changes in the law of physical custody in joint custody circumstances, he argues that the trial court committed manifest error when it found that the "seven and seven" custody arrangement may have future detrimental effects on the children's education and welfare. He bases this argument on select, out of context statements by the court appointed expert psychologist Dr. Lowe, in which Dr. Lowe states that he could not find any problems with the current "seven and seven" schedule in this particular situation. However, Dr. Lowe also repeatedly stated that he *1278 has a general aversion to these types of "seven and seven" physical custody arrangement as they generally do not work well and fail to provide children with the necessary stability and sense of home they need. Dr. Lowe also testified that in his experience and opinion, the traditional "every other weekend" visitation schedules increase each parent's involvement yet provide as little disruption to the children's school week stability as possible. Dr. Lowe's testimony made it clear that he did not recommend a "seven and seven" custody schedule and he stressed the importance of quality of time over quantity of time.
It is important to note that the "seven and seven" physical custody schedule established by the hearing officer in July of 2001, was not intended to be a permanent custody arrangement. The original hearing on this matter was originally scheduled for August of 2001, and the Hearing Officer's custody plan was an interim arrangement; a summer custody schedule intended to last only until a final disposition on this matter could be reached. Due to continuances, the "seven and seven" plan was in effect much longer than ever originally intended. Prior to the hearing officer's custody arrangement, the physical custody schedule in effect was a more traditional every other weekend arrangement with additional visitation in the middle of the week. Under these circumstances, and in light of the discretion given to the trial court's reliance on expert testimony, we do not feel the trial judge committed manifest error in modifying the physical custody schedule from a "seven and seven" schedule to the more traditional schedule of every other weekend visitations.

Visitation Rights of Grandparents
Mr. Dupre's second issue on appeal concerns the trial court's award of visitation rights to Victoria's biological paternal grandmother and her husband. Mr. Dupre asserts that the determination to grant visitation rights to a grandparent is governed by Civil Code Article 136. Under article 136, in extraordinary circumstances, and in the best interest of the child, a relative by blood or affinity not granted custody of a child may be granted reasonable visitation rights. Mr. Dupre argues that there are no such extraordinary circumstances here; therefore, the court's grant of visitation privileges to the Chatelains was not warranted.
Given the fact Victoria's biological father is in prison, it is debatable that there are not extraordinary circumstances here sufficient to grant the Chatelains visitation rights under Article 136. In fact, because of the extraordinary nature of such a circumstance, Revised Statute 9:344(A) deals specifically with visitation by grandparents in cases where a child's parent is incarcerated.
A. If one of the parties to a marriage dies, is interdicted, or incarcerated, and there is a minor child or children of such marriage, the parents of the deceased, interdicted, or incarcerated party without custody of such minor child or children may have reasonable visitation rights to the child or children of the marriage during their minority, if the court in its discretion finds that such visitation rights would be in the best interest of the child or children.
La.R.S. 9:344(A).
Mr. Dupre disputes the applicability of 9:344 in this matter on the basis that, because Victoria was born during his marriage with Janine, she is not a child of the marriage between Jason Lormand and Janie Bozant, but rather, is a child of his marriage with Janie. While we can find no specific definition of the phrase "child of the marriage" in either statute or jurisprudence, we find the language to be clear *1279 and unambiguous and referring to any child that is either conceived or born in the marriage. We find no jurisprudence even hinting that a child conceived within a valid marriage is not considered a child of that marriage should the parents divorce prior to the birth of that child. Such a result would be counterintuitive given the clear legislative intent behind the statute to ensure a conduit for contact with a child's biological family when the parent most likely to ensure that contact cannot do so themselves.
The interpretation of the phrase "child of the marriage" as including children either conceived or born during the marriage is most commonly found in cases of dual paternity. "The concept of `dual paternity' allows a child to seek support from his biological father notwithstanding that he was conceived or born during the mother's marriage to another man, and therefore presumed to be the legitimate child of the marriage." State Dept. of Soc. Services, Office of Family Support ex rel. Munson v. Washington, 32,550, pp. 2-3 (La.App. 2 Cir. 12/8/99); 747 So.2d 1245, 1247 (citations omitted); See also, State, Dept. of Social Services, Office of Family Support v. Williams, 605 So.2d 7 (La.App. 2 Cir.1992). Further, under La.R.S. 9:344(B), parents of a child's biological parent who is incarcerated may seek reasonable visitation. "When the parents of a minor child or children live in concubinage and one of the parents dies, or is incarcerated, the parents of the deceased or incarcerated party may have reasonable visitation rights to the child or children during their minority, if the court in its discretion finds that such visitation rights would be in the best interest of the child or children." La.R.S. 9:344(B). Such language shows a clear preference by the legislature to ensure a child's contact with biological family members, regardless of the marital status of the child's parents. Therefore, we find Mr. Dupre's contention that Victoria is not a child of the marriage between Janie and Jason Lormand is without merit, and that La.R.S. 9:344 is the applicable statute to apply for the grant of visitation to Mrs. Chatelain.
Mr. Dupre also contests the trial judge's award of visitation to Mrs. Chatelain on the grounds that it violates his constitutionally protected parental liberty interest. In support of this contention, Mr. Dupre cites Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). We presume Mr. Dupre is basing his claim of parental liberty interest on a presumption of legal paternity under La. Civ.Code art. 184. That presumption of paternity issue, however, is not before this court and we will not examine it further here. It is unnecessary to address Timothy's parental liberty interests in Victoria as La.R.S. 9:344 has already been distinguished from the statute at issue in Troxel by other Louisiana circuits.
This court has previously held that issues concerning non-parental visitation requests must now be decided in light of the United States Supreme Court's decision in Troxel. State In re Satchfield v. Guillot, XXXX-XXXX (La.App. 3 Cir. 6/26/02); 820 So.2d 1255. We, therefore, feel it time to address the applicability of the Supreme Court's holding in Troxel on grants of visitation under La.R.S. 9:344 head on. The Court emphasized the broad construction of the Washington statute in its determination that it violates a parent's liberty interests in raising their children.
Section 26.10.160(3), as applied to Granville and her family in this case, unconstitutionally infringes on that fundamental parental right. The Washington nonparental visitation statute is breathtakingly broad. According to the statute's text, "[a]ny person may petition *1280 the court for visitation rights at any time," and the court may grant such visitation rights whenever "visitation may serve the best interest of the child." §§ 26.10.160(3) (emphases added). That language effectively permits any third party seeking visitation to subject any decision by a parent concerning visitation of the parent's children to state-court review. Once the visitation petition has been filed in court and the matter is placed before a judge, a parent's decision that visitation would not be in the child's best interest is accorded no deference. Section 26.10.160(3) contains no requirement that a court accord the parent's decision any presumption of validity or any weight whatsoever. Instead, the Washington statute places the best-interest determination solely in the hands of the judge. Should the judge disagree with the parent's estimation of the child's best interests, the judge's view necessarily prevails. Thus, in practical effect, in the State of Washington a court can disregard and overturn any decision by a fit custodial parent concerning visitation whenever a third party affected by the decision files a visitation petition, based solely on the judge's determination of the child's best interests. The Washington Supreme Court had the opportunity to give §§ 26.10.160(3) a narrower reading, but it declined to do so.
Troxel, 530 U.S. at 67, 120 S.Ct. 2054 (emphasis in original).
In the above quote, the Supreme Court implies that a more narrow construction of the statute could possibly pass constitutional inspection. We feel, and other circuits have agreed, that 9:344 is sufficiently narrowly drafted so as to not violate the fundamental liberty interests of parents.
[U]nlike the Washington statute determined to have been unconstitutional in Troxel, La.R.S. 9:344 is more narrowly drawn. The Louisiana legislature has determined that in specified, limited situations, i.e., where one parent dies, is interdicted, or incarcerated, the parents of the deceased, interdicted, or incarcerated party may have reasonable visitation rights with the children provided the court finds said visitation to be in the best interest of the child. Unlike the Washington statute, the Louisiana legislature expressly limited the scope of La. R.S. 9:344 to the parents of the deceased or absent parent.
Galjour v. Harris, 2000-2696, p. 11 (La. App. 1 Cir. 3/28/01); 795 So.2d 350, 358, writ denied, 01-1238 (La.6/1/01); 793 So.2d 1229, and writ denied, 01-1273 (La.6/1/01); 793 So.2d 1230, and cert. denied, 534 U.S. 1020, 122 S.Ct. 545, 151 L.Ed.2d 422 (2001) (emphasis in original). Even if we were to determine that La.R.S. 9:344 is not applicable in this case, the constitutionality of the corresponding Civil Code Article 136 has been challenged specifically on the grounds that it violates a parent's fundamental liberty interests and it was found to be constitutional. See Reinhardt v. Reinhardt, 97-1889 (La.App. 1 Cir. 9/25/98); 720 So.2d 78, writ denied, 98-2697 (La.12/8/98); 734 So.2d 635, cert. denied, 526 U.S. 1114, 119 S.Ct. 1761, 143 L.Ed.2d 792 (1999).
For the reasons stated above and in light of Mrs. Chatelain's past contact with Victoria, as well as her substantial economic support for the past several years, we find no error in the trial court's determination that it is in Victoria's best interest to ensure her continued contact with Mrs. Chatelain.

DECREE
For the foregoing reasons we affirm the trial court's ruling changing the physical custody schedule from a "seven and seven" *1281 schedule, to an every other weekend schedule outlined above. We also affirm the trial court's grant of visitation every third weekend with Victoria Dupre. All costs of this appeal are assigned to Mr. Dupre.
AFFIRMED.
WOODARD, J., Dissents in part and concurs in part and assigns written reasons.
AMY, J., Concurs.
WOODARD, J., dissenting in part and concurring in part.
Respectfully, I dissent in part and concur in part.
Regarding the parents' custody/visitation issue, I recognize the great discretion that the trial court has in these matters; however, judges should put their personal predilections aside when faced with contrary evidence and decide a case based on the evidence before them.[1] In the instant case, the trial court acknowledged that it relied on its personal view that a 7/7 schedule does not work, despite the contrary evidence that it was working well in this particular situation.
In affirming this portion of the lower court's judgment, the majority gives great weight to the change that the 1995 revision made to La.R.S. 9:335. While it correctly notes that the revision removes the presumption, that sharing physical custody equally is in the best interest of the child, it fails to recognize that Tim Dupree does not need the benefit of that presumption. In the case sub judice, facts establish that, under this sharing arrangement, the children were well adjusted, doing well in school, and that there were no significant problems. Even Victoria liked it. Moreover, Dr. Lowe, the court appointed expert, admitted that while, generally, he too did not think the 7/7 arrangement was a good idea, it was working in this case.
Although the interim judgment, ordering the 7/7 arrangement, was to be in effect only until the court could hold a formal hearing in the matter, which was initially set for a couple of months later, the hearing was continued. Basically, this permitted the arrangement for more than six months. Thus, we have ample experience which demonstrates the effectiveness of the 7/7 plan in this case and, importantly, that this arrangement dramatically fosters these children's best interest. Thus, I believe that the trial court's failure to rely on the evidence was manifest error and should be reversed.
I concur in the majority's decision regarding the grandparents' visitation. I agree that La.R.S. 9:344(A) is determinative but find support for this statute's application within the Code itself.
A review of the pertinent articles, in pari materia, demonstrates that Victoria is a child of the marriage between Jason and Janie, as iterated in La.R.S. 9:344(A). This statute provides that:
If one of the parties to a marriage dies, is interdicted, or incarcerated, and there is a minor child or children of such marriage, the parents of the ... incarcerated party ... may have reasonable visitation rights to the child ... if the court in its discretion finds that such visitation rights would be in the best interest of the child or children.
(Emphasis added.)
Standing alone, La.Civ.Code art. 184, which states that "The husband of the *1282 mother is presumed to be the father of any children born or conceived during the marriage," (emphasis added) creates some confusion because it establishes a presumption of legal paternity in favor of, both, Jason and Tim. Likewise, standing alone, La.Civ.Code. art. 186, which provides an exception to Article 184 when "another man is presumed to be the father," is ambiguous concerning whether "another man" refers to the first husband, Jason, or the current husband, Tim. Nonetheless, an analysis of the statutory scheme, in pari materia, clarifies these ambiguities, yielding the conclusion that a child conceived during one marriage and born into another is a "child of the marriage" between the two people who were married at the time of conception, rather than at birth.
Specifically, Article 188 applies to "[a] man who marries a pregnant woman and who knows that she is pregnant at the time of the marriage." This article, which obviously applies to Tim, creates a presumption that Tim is the father unless "another man is presumed to be the father[.]" Thus, Article 188 specifically addresses the situation in the instant case. Furthermore, article 185 provides that "[a] child born less than three hundred days after the dissolution of the marriage is presumed to have been conceived during the marriage." Thus, Jason, the biological father, was already presumed to be Victoria's father at the time that Tim married Janie. Consequently, since there is no evidence in the record that Jason has disavowed Victoria, he is presumed to be the father.
Thus, the trial court had authority under La.R.S. 9:344 to grant reasonable visitation to the grandparents, provided it is in the children's best interest. Given the evidence in the record, I am concerned about the grandparents' willingness to foster a close relationship between Victoria and Tim, who has apparently provided her with consistent, excellent and significant primary care and love since her birth. This is a threshold tenet of Article 136 upon which a finding of best interest of the child is contingent. However, since we are required to defer to the trial court's discretion and judgment in this regard, I concur in the majority opinion, affirming this ruling.
NOTES
[1] See State, DOTD v. August Christina & Bros., Inc., 97-244 (La.App. 5 Cir. 2/11/98); 716 So.2d 372.