504 So.2d 856 (1987)
Olga Marie Stone WATERMEIER
v.
John Joseph WATERMEIER, III.
No. 86-C-2250.
Supreme Court of Louisiana.
April 6, 1987.
*857 Kenneth J. Servay, James A. Babst, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, for applicant.
Darryl J. Carimi, James C. Klick, Gretna, for respondents.
DIXON, Chief Justice.
In this case, the father of a child seeks a change in the award of permanent custody to the mother based on the presumption that joint custody is in the best interest of the child. This presumption was recently established in amendments to C.C. 146 and 157. A review of the procedural history in this custody dispute is relevant.
Dr. John Joseph Watermeier, III and Olga Stone were married in August, 1978. Their first son, Christopher (nicknamed "Christo"), was born in May of 1979. On July 10, 1981, Olga filed a petition for separation from bed and board. As part of a consent judgment dated July 30, 1981, the parties agreed that Olga would have custody of Christo and John would receive reasonable visitation rights. In October, 1981, Olga filed for the court to structure John's visitation rights. The next month John also filed to have the court structure visitation.
Trial began in December, 1981 concerning child support, alimony and visitation. A consent judgment was entered in January, 1982, granting Olga sole custody with liberal visitation rights to John to include three weekends per month, one weekday per week, one full week in the summer and certain holidays.
On July 21, 1982, Olga filed a contempt rule claiming John was behind in his child support payments. On the same day Olga filed for divorce and requested sole custody of Christo. In John's answer he requested joint custody under newly enacted legislation that would not be effective until January 1, 1983. In the alternative, John requested sole custody.
Divorce was granted in late September, 1982. John moved to continue the custody hearing until after the effective date of new legislation that established a presumption of joint custody for cases arising after January 1, 1983. This motion was denied. The trial court thereafter awarded Olga permanent custody subject to the same visitation rights that the parties had agreed upon in the prior consent judgment. John appealed.
In January, 1983, Olga filed another rule for contempt claiming John was again behind in his child support payments. The next month John filed a contempt rule against Olga claiming she failed to have Christo ready when he arrived to take him for the weekend. In March both rules for contempt were dismissed. However, John was required to pay the attorney fees on Olga's motion since the court found his support payments had been late. Also, John's scheduled visits with Christo would *858 take place unless Olga obtained specific orders from the child's physician that the child was bedridden or hospitalized. In December, 1983, Olga sought an injunction and a temporary restraining order claiming John had called her rude names while Christo was present.
On June 28, 1983, the court of appeal affirmed the trial court's decision to award Olga sole custody of Christo. In February, 1984, less than a year after the final judgment awarding Olga sole custody, John filed a new petition for joint custody. Olga filed an opposition in April, 1984 and trial began in July, 1984. Due to the trial judge's illness, the trial was not completed until January 2, 1985. On June 21, 1985 the trial judge rejected Dr. Watermeier's demand for a change in custody.
John appealed the trial court decision, and in April, 1986 the court of appeal remanded the case to the trial court. The court of appeal found that since the trial judge had failed to assign any reasons for his decision and had recused himself from the case two days after he had resolved the custody dispute, the court of appeal had no basis to determine whether the trial court had abused its discretion.
We granted writs, vacated the court of appeal judgment and remanded to the appellate court "to review the evidence, write an opinion and make an appropriate determination." Thereafter, the court of appeal held in a one page ruling that the best interest of the child would be best served by joint custody. The appellate court remanded the case to the trial court to determine the best way to implement a joint custody arrangement. Olga again sought writs to this court and writs were granted to clarify the law in this area.
At the time Olga filed for divorce and sole custody as well as when the trial court awarded Olga sole custody, C.C. 157(A) required that joint custody could only be awarded if both parents agreed. Since Olga did not agree to joint custody, the only issue before the trial court in the original custody proceeding was which parent would receive sole custody.
Less than a year after the original judgment of sole custody had been affirmed by the court of appeal, John filed a new petition to obtain joint custody based on new legislation. Civil Code article 157(A) had been amended to read, "in all cases of separation and divorce, and change of custody after an original award, permanent custody of the child or children shall be granted to the parents in accordance with Article 146." Civil Code article 146 describes the analysis used to determine temporary custody while C.C. 157 is used when determining permanent custody. When Olga had originally filed for sole custody, C.C. 146 had been similar to C.C. 157 in that it required both parents to agree to joint custody before the court could consider whether joint custody would be in the best interest of the child.
Act 307 of 1982 became effective on January 1, 1983, and therefore controlled the disposition of this case when John filed for a change to joint custody in February, 1984. Act 307 amended C.C. 146(C) to create a rebuttable presumption that joint custody is in the best interest of the child. Act 695 of 1983 amended C.C. 146(C) to list numerous specific factors to be reviewed by the trial court when considering whether a party had succeeded in rebutting the joint custody presumption.
Olga argues that John has failed to satisfy the burden placed on a moving party seeking to alter a prior custody ruling. In Bergeron v. Bergeron, 492 So.2d 1193, 1194 (La.1986), this court described the burden of proof rule as follows:
"... When a trial court has made a considered decree of permanent custody the party seeking a change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child...." Id. at 1200.
However, Bergeron specifically stated that this "heavy burden" would only apply to *859 attempts to modify custody rulings that were tried after the date Bergeron was rendered on August 19, 1986. Since this case was brought prior to the Bergeron decision, this new heavy burden rule is not applicable to this case.
In Bergeron v. Bergeron this court also held "that there must be a showing of a change of circumstances materially affecting the welfare of the child before the court may consider making a significant change in the custody order." See also, Turner v. Turner, 455 So.2d 1374 (La. 1984).
John filed this request to modify custody eight months after the original custody decision was affirmed by the court of appeal. He now argues a change in circumstances has occurred since Christo is older and his mother has moved into a neighborhood that is much closer to his father. However, both of these changes have occurred during the three years since this particular custody rule was filed. Although these changes ought not be the sole basis for a change of custody suit, at this stage in the protracted proceedings of this case, we think it appropriate to pretermit the issue of whether such a showing was made.
Assuming that John had the right to seek a change in custody, we do not find that joint custody is in Christo's best interest. The parties in this suit have failed to communicate amicably on even the most minor points. Almost every basis of contention between the parents has resulted in court litigation. Since Olga filed suit for separation, these parties have been in and out of court for almost six years. The child was two years old when the litigation began, and will be eight in two months. Joint custody can only be in the minor's best interest where there is an ability of the parents to communicate and share the responsibility of raising the child. Even in the suggested joint custody arrangement offered to the court by Dr. Watermeier, he states: "During the term within which the minor child resides with [his father or mother], the custodial parent need not confer with the non-custodial parent in the exercise of decision making rights, responsibility and authority; provided that this provision should not be construed to alter the domiciliary or visitation arrangements prescribed above." This appears to be a concession that responsible communication and compromise is not foreseeable in this case.
At the time this suit was litigated, C.C. 146(D) required that the parents in a joint custody arrangement "shall enjoy the natural cotutorship of such children in accordance with Article 250, subject to the plan of implementation effected pursuant to Paragraph A of this Article." Civil Code article 250 specified in part, "if the parents are awarded joint custody of a minor child, then the cotutorship of the minor child shall belong to both parents, with equal authority, privileges, and responsibilities, unless modified by order of the court or by an agreement of the parents, approved by the court awarding joint custody." We find it unlikely that these parties will be capable of cooperating as cotutors who must work together and agree on the critical issues involved in raising a child.
Civil Code article 146(C)(2)(j) specifies that one factor to consider when reviewing the presumption of joint custody is the "willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent." Dr. Watermeier has not demonstrated an ability to support and encourage Christo's relationship with his mother.
For these reasons the ruling of the court of appeal is vacated and we reinstate the judgment of the district court rejecting Dr. Watermeier's demand for a change of custody, at his cost.
LEMMON, J., concurs in the decree.