545 So.2d 1271 (1989)
Charlene D. LEE, Plaintiff-Appellant,
v.
Michael Wayne LEE, Defendant-Appellee.
No. 20548-CA.
Court of Appeal of Louisiana, Second Circuit.
June 14, 1989.
*1272 Vicki L. Green, Monroe, for plaintiff-appellant.
David G. Haynes, West Monroe, for defendant-appellee.
Before MARVIN, SEXTON, JJ., and JASPER E. JONES, J. Pro Tem.
MARVIN, Judge.
In this child custody action, the father who did not contest an award of sole custody to the mother in a 1987 divorce judgment, sought joint custody after the mother and child moved to Colorado. The trial court modified the award from sole to joint custody after overruling the mother's exception of lack of jurisdiction under the Uniform Child Custody Jurisdiction Act, LRS 13:1700, et seq.
On appeal, the mother challenges the trial court's rulings on the exception and on the merits, as well as its hearing of the custody rule when neither she nor her attorney was present.
On this record, we find no error or abuse of discretion and affirm.

FACTS
The child was born in July 1984. Her parents were legally separated in February 1987 and divorced on October 28, 1987, in separate actions by the mother in Ouachita Parish. Each judgment was obtained by default and awarded the mother sole custody of the child, subject to reasonable visitation rights of the father.
For about a year between the physical separation of the parties and their divorce, the mother and child lived with the child's paternal grandparents in Calhoun. The father remained in West Monroe, where the parties had lived before they separated. On the same day that the divorce was granted, October 28, 1987, the mother and child moved to Denver, Colorado.
On April 28, 1988, the father and his parents filed the rule to change custody, alleging that they had not seen the child since she and her mother moved to Colorado, and seeking joint custody or specific visitation rights. The grandparents sought visitation rights for themselves if the court did not grant the father's request for joint custody.
The rule was originally set for June 2, 1988. Notice of the hearing date was served on the mother through her attorney of record on May 3, 1988, and was apparently also mailed to her by the father's attorney. The mother filed an exception as to jurisdiction on June 1, 1988, and appeared in court with her attorney the next day for the hearing on the rule. In an effort to resolve the matter amicably, the parties apparently agreed to continue the hearing until July 25, 1988.
Neither the mother nor her attorney appeared in court on July 25. The father's attorney informed the court that he and the mother's attorney had jointly reset the hearing for July 25 when they were in court on June 2, that he had had no contact from the mother's attorney since then regarding the hearing date, and that he had received this information when he called the mother's attorney's office on the morning of July 25:
His secretary told me that he had received a telephone call from [the mother] this morning asking if the court date was today or tomorrow, ... that [her attorney] thought maybe it was tomorrow or were we even still having it since they had gone to Colorado. Then secondly I insinuated that possibly we could move the date to tomorrow and she said he was actually tied up in court, too, and he could try his best to be here.
Because the mother and her attorney had personally received notice of the July 25 *1273 hearing date when they were in court on June 2, the trial court heard evidence on the merits of the rule after overruling the mother's jurisdictional exception.
The father testified that he had not seen his daughter since she and her mother moved to Colorado immediately after the divorce judgment was signed awarding the mother sole custody and the father "reasonable" but otherwise unspecified visitation.
The child's grandfather testified that the mother first agreed, and then refused, to allow the grandparents to pick up the child in Colorado and bring her to Louisiana for a two-week visit over the 1987 Christmas holidays. The grandfather also testified that when the parties were in court on June 2, the mother agreed to let the grandparents visit the child in Denver for one week in mid-June and bring her back to Louisiana for one week if they would pay for the child's airline ticket to return to Colorado, which they agreed to do. The grandparents went to Denver on June 10 and visited the child, but the mother would not let them bring her back to Louisiana. The grandparents hired a Colorado attorney who filed a claim for visitation on their behalf. After learning that this proceeding was pending, the Colorado court declined to hear the grandparents' claim.
The grandfather described the mutual affection between the child and her grandparents both before the move to Colorado and during their June 1988 visit. He said he knew of no reason why his son, the child's father, should not have joint custody or be allowed to be alone with the child. When the rule was heard, the father was living in his parents' home in Calhoun, where the child had lived with her mother before the move.
The father's attorney informed the court that the child's grandmother was present, stating that her testimony would be the same as the grandfather's if the court desired to hear it.
The father testified that he had a good relationship with his daughter and knew of no reason why the child's mother would not want the child to be with him. The father did not object to the mother having primary residential custody but desired joint custody, to be exercised by him primarily during the summer.
The trial court awarded joint custody, with the mother remaining as the domiciliary parent, and granted custody to the father from June 2 until August 20 of each year, for one week over the Christmas holidays each year, and for weekend visits in Colorado after giving the mother one week's notice of the visit. The judgment allows the paternal grandparents to exercise the "custody and/or visitation rights" awarded to the father.
The mother, with different counsel on appeal, contends the trial court erred in overruling the exception as to jurisdiction, in hearing the rule when she was not present or represented, and in awarding joint custody without evidence of the child's present condition or the mother's present living situation. She contends joint custody is not in the child's best interest because the parties live in different states and cannot communicate and cooperate with each other as they would have to do to successfully share custody.

JURISDICTION
A Louisiana court has continuing jurisdiction to modify its prior custody decree if it meets the jurisdiction requirements of the UCCJA (LRS 13:1702) when the modification is sought. See Counts v. Bracken, 494 So.2d 1275, 1278 (La.App.2d Cir.1986).
The mother contends there is no continuing jurisdiction in Louisiana because Colorado was the child's home state "within six months before the commencement of the proceedings" for joint custody. § 1702A(1)(ii).
Louisiana was clearly the child's home state before the mother and child moved to Colorado on October 28, 1987. The rule for joint custody was filed on April 28, 1988. The move is the "event" that triggers or begins the six-month "home state" period. For that reason, the date of the move is not included in the calculation. See CCP Art. *1274 5059; Hammons v. Hammons, 475 So.2d 132 (La.App.2d Cir.1985). Colorado could not have acquired home state status until April 29, 1988, one day after the rule was filed. Louisiana remained the child's home state "within six months before the commencement of the proceeding."
Even if Louisiana did not have home state status under § 1702A(1)(ii), the Louisiana court could exercise continuing jurisdiction if "the child and his parents, or the child and at least one contestant, have a significant connection with this state, and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships." § 1702A(2). See and compare Revere v. Revere, 389 So.2d 1277 (La.1980); Martinez v. Reed, 490 So.2d 303 (La.App. 4th Cir.1986).
Jurisdiction under § 1702A(2) rests with the state that has maximum rather than minimum contacts with the child and optimum access to relevant evidence about the child and the family. Counts v. Bracken, supra.
In the April 1988 rule for joint custody and grandparent visitation it was alleged that the child lived with her paternal grandparents in Ouachita Parish and had a close relationship with them and with her father before the October 1987 divorce. It was also alleged that the mother and the child "moved in with [the mother's] sister in Denver, Colorado ... [s]ometime after the divorce."
In the mother's exception as to jurisdiction, she alleged that she has resided in Colorado since the date of the divorce judgment and that she and the child have not lived in Louisiana since that time.
Because the mother offered no evidence in support of the exception, the trial court, for purposes of the exception, was bound to accept as true, the allegations in the rule. The allegations, on their face, do not show a lack of jurisdiction in Louisiana. The burden was on the mother to show that the child's connections with Colorado were more significant, and evidence on the custody issue was more accessible there, than in Louisiana. Because she did not carry this burden, the exception was properly overruled. See Morrison v. H.B. Mitchell Const. Co., 369 So.2d 1102 (La. App. 1st Cir.1979).
The child, born in July 1984, lived in Louisiana for 39 months before the move to Colorado. She and her mother lived with her paternal grandparents for about a year before the move. When the rule for joint custody and grandparent visitation was filed, she had lived in Colorado for no more than six months. The rule expressly states that the father desires the child's primary domicile to remain with the mother and does not allege that the child has suffered any harm or neglect while in her mother's custody in Colorado. Substantial evidence of the father's fitness for joint custody and the child's relationships with her father and paternal grandparents came from Louisiana witnesses. On this record, we deem that the "significant connection-substantial evidence" requirement for the Louisiana court's exercise of continuing jurisdiction was also satisfied. See and compare the respective factual circumstances and discussion of the jurisdictional issue in Revere v. Revere and Counts v. Bracken, cited supra.

HEARING RULE IN MOTHER'S ABSENCE
The mother contends that even if the trial court had jurisdiction, it should have continued the rule until the "strange absence" of the mother and her attorney could be explained.
The UCCJA requires that an out-of-state litigant be given reasonable notice of the custody hearing and an opportunity to be heard. Notice must be given at least ten days before the hearing, in a manner reasonably calculated to give actual notice. §§ 1703, 1704.
The record supports the trial court's finding that the mother and her attorney received actual notice that the rule was reset for July 25, 1988, when they were present in court about seven weeks earlier, on June 2. The statutory notice requirements were clearly satisfied. See and compare Price v. *1275 Price, 445 So.2d 82 (La.App.2d Cir.1984), writ denied.
The information that the father's attorney received from the mother's attorney's office on July 25 suggested, at best, uncertainty about whether the hearing was set for that day or the next day. Neither the mother nor her attorney contacted the court to verify the hearing date, to explain their absence, or to seek a continuance. Although the mother argues that the father would not have been prejudiced by postponement of the hearing, the record shows that the mother had twice agreed and then refused to allow the child's grandparents to bring her to Louisiana to visit her father and other relatives, once over the 1987 Christmas holidays and again in the period between the two rule dates when the parties were attempting to reach an agreement concerning visitation.
Under the circumstances, we cannot agree that the trial court erred in hearing the rule in the mother's absence. See and compare Matthews v. Matthews, 220 So.2d 246 (La.App.3d Cir.1969); Dubea v. State Through La. Dept. of Corr., 465 So.2d 245 (La.App.3d Cir.1985).

MERITS
The uncontested sole custody award to the mother was not a "considered decree" and could be changed under the "best interest of the child" standard rather than the more stringent "change in circumstances" standard that applies to a considered decree. Dungan v. Dungan, 499 So.2d 149 (La.App.2d Cir.1986).
Although CC Art. 146 K negates the presumption that joint custody is in the child's best interest when the parents live in different states, it does not mandate sole custody. Joint custody may be awarded to parents who live in different states if it is found to be in the child's best interest without the aid of the presumption. Key v. Key, 519 So.2d 319 (La.App.2d Cir.1988).
The mother contends the evidence on the joint custody rule was insufficient to allow the trial court to determine that joint custody was in the child's best interest. Under the circumstances of this record, we cannot agree.
The father did not contest the mother's fitness as a parent, nor her status as the domiciliary parent for most of the year. The mother did not allege or prove, and does not now argue, that the father is unfit or unable to care for the child in any way while she is in his custody.
Watermeier v. Watermeier, 504 So.2d 856 (La.1987), does not support the mother's argument that joint custody is not in the child's best interest because the parents are unwilling and unable to communicate and share the responsibilities of raising the child. There, the custody litigation spanned six years of the life of the eight-year-old child. The father's request for joint custody in lieu of the sole custody award to the mother was denied on findings that the father had conceded that reasonable communication and compromise between the parents was not foreseeable and had demonstrated that he was unable to support and encourage the child's relationship with his mother.
Here, custody was not contested immediately after the mother and child moved to Colorado, but only after the child's father and grandparents had tried unsuccessfully to arrange visitation in Louisiana with the mother's consent in the months after the move. While the record shows the mother's reluctance to let the child leave Colorado, she allowed the grandparents to visit the child in Denver after the rule was filed. The father expressed a willingness to communicate with the child's mother and share parental responsibilities as well as transportation costs. This record does not show that both parents are unwilling to communicate and cooperate in raising the child, as they were in Watermeier v. Watermeier, supra, or that joint custody has been tried and "has proved unworkable," as was found in Murray v. Murray, 521 So.2d 754 (La.App.2d Cir.1988).
This litigation was obviously instigated to foster the child's contact with her father and paternal grandparents in Louisiana, primarily during the summer, without disturbing her domicile with the mother for *1276 most of the year. It would be inconsistent with the purpose and intent of the joint custody lawto foster good relationships between the child and both parentsto allow the mother to defeat the father's initial request for joint custody by relying on her own reluctance to allow the child to leave Colorado to show that joint custody is unworkable.
On this record, we find no clear abuse of the trial court's discretion in awarding joint custody as proposed by the father. See and compare Hatchett v. Hatchett, 449 So.2d 626 (La.App.1st Cir.1984), writ denied.

DECREE
At the mother's cost, the judgment is AFFIRMED.