556 So.2d 207 (1990)
Barry E. EDWARDS, Plaintiff-Appellant,
v.
Jacqueline A. EDWARDS, Defendant-Appellee.
No. 21068-CA.
Court of Appeal of Louisiana, Second Circuit.
January 24, 1990.
*208 Barry E. Edwards, Shreveport, for plaintiff-appellant.
Jack H. Kaplan, Shreveport, for defendant-appellee.
Before HALL, MARVIN and FRED W. JONES, Jr., JJ.
MARVIN, Judge.
In this post-divorce action to modify joint custody, the father appeals a judgment which awarded sole custody of their six-year-old son to the mother and permitted the mother and son to move from Shreveport to Atlanta, Georgia, with her second husband whom she had recently married.
In one of his six assignments of error, the father complains that he should not have been assessed to pay $2,000 attorney fees to the mother.
We affirm.

FACTS
The litigants married in 1979 and were legally separated on December 15, 1986. The mother was awarded $300 monthly child support. A joint custody plan was proposed by the parents and approved by the trial court. She cited him for contempt in April 1987, alleging he was four months in arrears in his support obligation and had physically and mentally harassed her. He countered with similar allegations of her harassment of him. The trial court found both in contempt and sentenced them to jail.
In June 1987 the parties were again in court, with each making allegations of non-cooperation and harassment against the other. After a hearing the court designated the mother as the domiciliary parent and gave her custody for the nine-month school year subject to specific visitation periods for the child to be with the father. The litigants could not agree on the wording of the judgment that was rendered by the court and the court eventually wrote and signed its own judgment on July 19, 1988.
This judgment, rendered in 1987, was in effect when the mother instituted her action on August 24, 1988. In this petition she requested that the joint custody plan be amended to allow her to marry and move to Atlanta, Georgia, and sought an executory judgment for past due child support, citing the father for contempt. The father again countered, alleging that she was not cooperative and seeking injunctive relief to prohibit the child from attending any school other than the parochial school mentioned in a separate written agreement.
Before a hearing was held, the mother married her second husband on September 2, 1988, and thereafter supplemented her pleadings to reflect this, requesting that she be designated as the "custodial parent," and that the father's visitation privileges be reduced.
The record shows, and the father does not seriously dispute, that the mother, who is gainfully employed as a registered nurse, and the father, a lawyer, are hostile toward one another and unable to communicate about the custody of their son and that the father again was three months in arrears in his support obligation.

THE FATHER'S CONTENTIONS
We cannot find, as the father contends, that the 1987 custody judgment was a "considered decree." The issue of parental fitness was not litigated in 1987. Both parents were then assumed to have been fit and loving parents. See Bergeron v. Bergeron, 492 So.2d 1193 (La.1986). Compare Meredith v. Meredith, 521 So.2d 793 (La. App. 2d Cir.1988); Dungan v. Dungan, 499 So.2d 149 (La.App. 2d Cir.1986).
*209 The mother must, however, show a change of circumstances after the 1987 decree. CC Art. 157); Bailey v. Bailey, 527 So.2d 1030 (La.App. 2d Cir.1988), writ denied. She has clearly shown the change of circumstances.
The record and CC Art. 146(E) is also contrary to the father's contention that the trial court was without authority to change joint custody to sole custody. The mother's pleadings clearly announced her intention to modify custody because of her impending marriage and move to Georgia. See Townsend v. Cleve Heyl Chevrolet-Buick, Inc., 318 So.2d 618 (La.App. 2d Cir.1975). Moreover, Art. 146(E) provides that joint custody may be either modified or terminated "upon petition" of a parent "or on the court's own motion" where the child's best interest requires.
On this record, we cannot find that the trial court abused its discretion in terminating joint custody and awarding the mother sole custody.
As noted, the record clearly shows the parents cannot communicate or put aside their differences. They at least agree in that finding. This circumstance, with the mother's marriage and move out of state, constitutes the necessary change in circumstances which mandates termination of joint custody for the best interest of the child. See and compare Watermeier v. Watermeier, 504 So.2d 856 (La.1987); Turner v. Turner, 455 So.2d 1374 (La. 1984); Murray v. Murray, 521 So.2d 754 (La.App. 2d Cir.1988); and Stewart v. Stewart, 525 So.2d 218 (La.App. 1st Cir. 1988). The trial court was authorized, and indeed, obligated, to determine then which parent should be awarded sole custody.
There is no maternal preference rule. In determining sole custody, a trial court "shall not prefer" a parent as custodian merely upon that parent's sex. C.C. Art. 146(A)(2). The parents stand on equal footing in a custody dispute. The court shall determine the child's best interest upon the relative fitness and ability of the competing parents in all respects to care for the child under Art. 146(C)(2) criteria. C.C. Arts. 146 and 157.
The record refutes the father's contention that the trial court applied the maternal preference rule. In finding that the mother had been the child's principal nurturing parent, the court was emphasizing that the father was also a loving and a nurturing parent, but not to the same extent as the mother. The court pointed out that the mother had personally cared for and assisted the child throughout the school year while the father, with weekend visitations, primarily relied on his grandmother and aunt, who were retired educators, to teach and improve the child's learning skills.
The record reveals that although the child's lifetime connections are in Shreveport, his life here has not been satisfactory and stable. He has attended three different schools in as many years. He has lived in several homes and has witnessed his parents' hostility toward each other in and out of court. The record also shows that the father has not fully exercised his visitation rights, often picking the child up a day later and returning him earlier than scheduled. Some of the hostility arises because the father has not timely and properly paid child support.
The mother testified that she and her new husband will live in an Atlanta condominium located near good schools, parks, and other recreation facilities, various churches and other children, that the child will have his own room as he has been accustomed, and that she is willing to work out liberal holiday visitation. The record further shows that the families of the mother and her husband live in Shreveport and that they will often visit here.
Dr. Susan Vigen, a psychologist who interviewed the child before the 1988 hearing, testified that the child's primary care has been provided by the mother and maternal grandmother, as well as the father. The child has a good relationship with his father, with whom he has participated in many activities. Dr. Vigen said that the child told her that he didn't like his mother any more, was apparently having trouble adjusting to mother's new life, and wanted *210 to live with his father and spend time with "Grandma Smith" (the maternal grandmother). Dr. Vigen did not interview either parent, but opined that it would be better and less stressful for the child to remain in Shreveport, having just been enrolled in a new school, and complete the school year.
The principal of the parochial school testified that the child had done well in pre-school and kindergarten. The counselor at the public school, the child's 1988 school, testified that the child quickly adapted to the change of schools and that he was doing well there. The counselor also stated that the child was highly intelligent (90 percent on entrance tests) and would adapt to new school changes with family support.
Upon appellate review, we are required to give great weight to the determinations and factual conclusions of trial court which are based on reasonable evaluations of credibility and reasonable inferences of fact. We do not disturb the trial court's findings unless they are demonstrated to be clearly wrong or a manifest abuse of the court's discretion. Rosell v. ESCO, 549 So.2d 840 (La.1989); Bergeron v. Bergeron, supra; Peters v. Peters, 449 So.2d 1372 (La.App. 2d Cir.1984).
We adopt the trial court's findings as our own in the absence of clear error, even if other conclusions from the same evidence are equally reasonable. Harris v. Pineset, 499 So.2d 499 (La.App. 2d Cir.1986), writs denied.
We agree with the trial court's determination to award sole custody to the mother and adopt the reasons of the trial court, which we append as an unpublished opinion.[*] See and compare our opinions of this date in Draper v. Draper, 556 So.2d 210 (La.App. 2d Cir.1990); and Waits v. Waits, 556 So.2d 215 (La.App. 2d Cir.1990). See Lee v. Lee, 545 So.2d 1271 (La.App. 2d Cir.1989).

ATTORNEY FEES
The father last contends that the trial court abused its discretion in awarding $2,000 in attorney's fees. LRS 9:305 mandates that the trial court, except for good cause, shall award attorney's fees and costs to the prevailing party in actions for past due child support. The father does not contest the finding that he owes three months child support. In the two-day hearing, he claimed credit for tuition payments he paid pursuant to an agreement with the mother. The court noted that tuition was not required by court order while the child support was. The mother did not answer the appeal and we cannot increase attorney fees. The amount of the attorney fees is reasonable and not an abuse of discretion. Rosell, supra.

DECREE
At the father's cost, the judgment is AFFIRMED.
NOTES
[*] Editor's Note: The trial court opinion is omitted for publication purposes.