822 So.2d 770 (2002)
Jayne S. STEPHENS
v.
Mickey Joe STEPHENS.
No. 2002 CU 0402.
Court of Appeal of Louisiana, First Circuit.
June 21, 2002.
*772 Vincent A. Saffiotti, Baton Rouge, Counsel for Jayne S. Stephens.
Donna Wright Lee, Baton Rouge, Counsel for Mickey Joe Stephens.
Before: FOIL, PETTIGREW, and KLINE[1], JJ.
WILLIAM F. KLINE, JR., J. Pro Tem.
Plaintiff spouse, Jayne S. Stephens, brought this appeal claiming that the trial court erred in fashioning a joint custody arrangement in which each parent would have equal physical custody of the two *773 minor children born of the marriage.[2] For the reasons that follow, we affirm in part, reverse in part, and remand.

FACTS AND PROCEDURAL HISTORY
On September 27, 1980, Jayne S. Stephens and Mickey Joe Stephens were married in Verona, Pennsylvania. Two children were born of the marriage, a son, A.R.S., born February 4, 1984, and a daughter, A.E.S., born April 22, 1988. According to Mrs. Stephens, the couple began experiencing difficulties in their marriage, culminating in the filing of a petition for divorce under La. C.C. art. 102 on June 7, 2000. The trial court rendered a judgment granting divorce on March 28, 2001.
Pursuant to this divorce action, each party sought custody of the two minor children. Mrs. Stephens, in her petition for divorce, asked that joint custody be awarded to the parties. Mr. Stephens answered and filed a reconventional demand asking that he be awarded sole custody of the minor children. A hearing was held on August 22, 2000 wherein the trial court ordered that the parents share physical custody of the children equally and instituted an interim arrangement requiring the two minor children to spend alternating weeks with each parent. Dr. Mary Lou Kelley was appointed by the court to perform psychological evaluations on both parties and their children.
A trial to determine those matters incident to the divorce judgment began on April 30, 2001 and was continued to June 27, 2001. A final judgment was rendered on July 20, 2001 awarding joint custody of the children and maintaining the interim equal physical custody plan. Mrs. Stephens was named the domiciliary parent. The court further ordered Mrs. Stephens to discuss all major decisions regarding the children with her former husband and set child support payments according to the guidelines.
Thereafter, Mrs. Stephens filed a devolutive appeal on September 10, 2001, appealing only that portion of the judgment that found the final custody arrangement, of alternating weeks spent with each parent, to be in the best interest of the child. On appeal, Mrs. Stephens states in her first assignment of error, to wit: "[t]he trial court's balancing of the best interests of the children with the `right' of a parent to equal physical custody was prejudicial legal error which interdicted the fact finding process and thus [led] to an improper conclusion that equal physical custody was in the best interests of the minor children and feasible in the present case." Furthermore, Mrs. Stephens avers in her second assignment of error, as follows: "[t]he trial court was manifestly erroneous, and thus clearly wrong, in awarding the parties equal (50/50) physical custody of the minor children where the evidence presented at the time of trial established that such a physical custody schedule was neither in the best interests of the minor children nor feasible."
Mr. Stephens argues in support of the trial court judgment on appeal, but admits that one of the cases cited in the trial court's judgment was based on prior law; he avers that this reliance did not distort the judge's application of the present law to the facts and circumstances of this case. Mr. Stephens further alleged that the court-appointed expert was clearly biased against him and the trial court properly ignored the recommendations made in her report.

LAW AND ANALYSIS
Appellate review of the factual circumstances and evidence will not be the *774 basis for reversal of the trial court's judgment even if the Court of Appeals is convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). If the factual findings are found to be reasonable and supported by the record, the trial court's determinations must be given much discretion especially in regards to the credibility of witness testimony, for only the fact-finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Rosell v. ESCO, 549 So.2d at 844. However, in Evans v. Lungrin, 97-0541, pp. 6-7 (La.2/6/98), 708 So.2d 731, 735, the supreme court re-stated the well-established legal principal that any legal error made by the trial court may be grounds for a reversal of the lower judgment:
It is well-settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). However, where one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable and, if the record is otherwise complete, the appellate court should make its own independent de novo review of the record.... A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. When such a prejudicial error of law skews the trial court's finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts de novo. [Citations omitted.]
In determining the most suitable custody arrangement upon separation or divorce of the parents of a minor child, La. C.C. art. 131 mandates that "the court shall award custody of a child in accordance with the best interest of the child." Furthermore, under La. C.C. art. 132, where no agreement has been reached by the parties, "the court shall award custody to the parents jointly." Once joint custody has been found to be in the best interest of the child, the legislature has provided a trial court with further guidance by enacting La. R.S. 9:335, which states a joint custody implementation order shall allocate the time periods during which each parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents, and to the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally.
The paramount consideration in any determination of child custody is the best interest of the child. Shaw v. Shaw, 30-613, p. 4 (La.App. 2nd Cir.6/24/98), 714 So.2d 906, 909, writs denied, 98-2414, 98-2426 (La.11/20/98), 729 So.2d 556, 558. Each child custody case must be viewed in light of its own particular set of facts and circumstances. The trial court is vested with vast discretion in matters of child custody and visitation, and its determination is entitled to great weight and will not be disturbed on appeal unless a clear showing of abuse of its discretion is made. Gill v. Dufrene, 97-0777, p. 6 (La.App. 1st Cir.12/29/97), 706 So.2d 518, 521.
Mrs. Stephens contends that the judge below made a significant legal error by citing Bynog v. Bynog, 95-173 (La.App. 3d Cir.7/26/95), 663 So.2d 86 and Remson v. Remson, 95-1951 (La.App. 1st *775 Cir.4/4/96), 672 So.2d 409, cases decided under a prior version of La. C.C. art. 131. This error in reasoning, appellant claims, substantially influenced the legal conclusions drawn and relied on by the trial judge in the implementation of the current custody plan, requiring the minor child to spend alternating weeks at each parent's house.
In the trial court's written reasons for judgment, the judge stated that La. R.S. 9:335 indicates a clear intent to foster an equal sharing of custody when it is feasible and in the best interest of the children, and further stated that while the best interest of the child remains the paramount concern in making custody determinations, that interest must be balanced with a parent's right to equally share the physical custody of the child where feasible, citing Bynog and Remson.
Appellant maintains the trial court committed legal error in citing language found in these cases to negate the codal mandate that the best interest of the child is the primary concern, by weighing against this standard the supposed right of the parent to equal physical custody.
A review of recent legislative changes is helpful to an understanding of the issue under consideration. Prior to its repeal by 1993 La. Acts No. 261, effective January 1, 1994, former La. C.C. art. 131 provided as follows, in pertinent part:
A. If there are children of the marriage whose provisional custody is claimed by both husband and wife, the suit being yet pending and undecided, custody shall be awarded in the following order of preference, according to the best interest of the children:
(1) To both parents jointly....
* * *
C. There shall be a rebuttable presumption that joint custody is in the best interest of a minor child.
(1) However, the parents may agree to an award of custody to one parent.
(2) The presumption in favor of joint custody may be rebutted by a showing that it is not in the best interest of the child, after consideration of evidence introduced with respect to all of the following factors:
* * *
D. For purposes of this Article, "joint custody" shall mean the parents shall, to the extent feasible, share the physical custody of children of the marriage. In making an award of physical custody, the court shall consider, among other things, the factors enumerated in Paragraph (C)(2).... Physical care and custody shall be shared by the parents in such a way as to assure a child of frequent and continuing contact with both parents.... [Emphasis added.]
The substance of former La. C.C. art. 131 was re-enacted in La. C.C. arts. 131 and 132, and in La. R.S. 9:335 by 1993 La. Acts No. 261, § 5, effective January 1, 1994, to read as follows:
Art. 131. Court to determine custody
In a proceeding for divorce or thereafter, the court shall award custody of a child in accordance with the best interest of the child.
Art. 132. Award of custody to parents
If the parents agree who is to have custody, the court shall award custody in accordance with their agreement unless the best interest of the child requires a different award.
In the absence of agreement, or if the agreement is not in the best interest of *776 the child, the court shall award custody to the parents jointly; however, if custody in one parent is shown by clear and convincing evidence to serve the best interest of the child, the court shall award custody to that parent.
9:335. Joint custody decree and implementation order
A.(1) In a proceeding in which joint custody is decreed, the court shall render a joint custody implementation order except for good cause shown.
(2)(a) The implementation order shall allocate the time periods during which each parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents.
(b) To the extent it is feasible, physical custody of the children shall be shared equally. [Emphasis added.]

* * *
The comments to new Article 131 state that, although revised, the article did not change the law in respect to keeping the "best interest of the child" standard as the "overriding test to be applied in all child custody determinations." La. C.C. art. 131, Comment (a).
Paragraph (A)(2)(b) of La. R.S. 9:335 was subsequently amended by 1995 La. Acts No. 463, § 1, effective August 15, 1995, to insert the language "and in the best interest of the child" and to substitute "should" for "shall" following "children." The current version of La. R.S. 9:335 reads as follows, in pertinent part:
A.(1) In a proceeding in which joint custody is decreed, the court shall render a joint custody implementation order except for good cause shown.
(2)(a) The implementation order shall allocate the time periods during which each parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents.
(b) To the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally. [Emphasis added.]
Both Bynog and Remson considered cases that were tried prior to the 1995 amendment to La. R.S. 9:335. Thus, these prior decisions interpreted the former language of the article that read the "physical custody of the children shall be shared equally," and in giving effect to that mandatory language held, "the best interest of the child remains the paramount concern in making custody determinations; however, that interest must be balanced with a parent's right to equally share the physical custody of the child where feasible." Remson v. Remson, 672 So.2d at 412; (emphasis added).[3]
The 1995 amendment to La. R.S. 9:335 changed the law from a mandate of equal sharing of the physical custody in a joint custody situation to a recommendation of equal sharing of the physical custody of a child that is subject to the requirement that such an arrangement be "feasible" and "in the best interest of the child."
Unfortunately, the language of Bynog and Remson to the effect that "the best interest must be balanced with a parent's right to equally share the physical custody of the child where feasible" has *777 been quoted in post-1995 cases, leading to some confusion among the courts of the state. Nevertheless, the supreme court has clearly stated in Evans v. Lungrin, 708 So.2d at 736:
[T]he trial court's application of the express mandate of the prior Article 131 that to the extent feasible, physical custody of the children shall be shared equally, and the trial court's determination that "joint custody with equal time for each parent is presumed to be in the best interest of the child," is legal error. [Emphasis original.]
After assessing the legislative amendments and revisions, the supreme court found that the legislative amendments intended to make it clear that the primary consideration and the prevailing inquiry is whether the custody arrangement is in the best interest of the child. Evans v. Lungrin, 708 So.2d at 740.
Likewise, this court has clearly stated, "La. R.S. 9:335(A)(2)(a) and (b) call for frequent and continuing contact with both parents, rising to equal sharing of physical custody, if feasible. However, the law does not mandate equal sharing and the trial court is imbued with much discretion in the determination of what constitutes physical custody or feasible, reasonable visitation. The paramount consideration is always the best interest of the child." Caro v. Caro, 95-0173, pp. 3-4 (La.App. 1st Cir.10/6/95), 671 So.2d 516, 519. (Emphasis added.) We further note the Second Circuit Court of Appeal decision of Shaw v. Shaw, 714 So.2d at 910, rendered subsequent to the Evans opinion, which held to wit: "[s]o long as `the child is assured of frequent and continuing contact with both parents,' the primary goal of joint custody is met. Because of the trial court's mandate and great discretion for considering the best interest of the child, joint custody does not mean a fifty-fifty sharing of time on the strength of feasibility alone." (Citations omitted.)
It is clear from the Evans decision that any reliance on the prior presumption that joint custody, meaning equal physical custody, whether by direct citation to former Article 131, or through citation to jurisprudence so holding, is legal error. Based on the current form of the relevant Civil Code articles, the Evans case, and the amended version of La. R.S. 9:335, we believe the correct interpretation of the statute is that once a joint custody arrangement has been decreed, the court shall, except for good cause shown, render a joint custody implementation order allocating the time that each parent is to have physical custody of the minor child. Enough time should be given so that each parent is assured they will be in "frequent and continuing contact" with the child. However, only if it is both feasible and in the best interest of the child, should the court consider granting equal physical custody to the parents. The "best interest of the child" inquiry is the dominant consideration in any custody determination and cannot be "balanced" against any other right or privilege. To the extent that prior jurisprudence is in conflict with the supreme court's decision in Evans, it must yield to the conclusions of law expressed in that opinion.
In the instant case, the trial court expressly relied on the Bynog and Remson opinions,[4] the pertinent holdings of which *778 were rendered inapplicable by subsequent legislative changes to the law, as recognized in Evans. The reliance of the trial court on jurisprudence interpreting prior law, constituted legal error. This legal error, we find, did influence the trial court's ruling and such error was prejudicial to the parties. Thus, this court has the authority to make an independent de novo review of the record. See Evans v. Lungrin, 708 So.2d at 735.
In determining the best interest of a child, La. C.C. art. 134 requires a court to consider all relevant factors and lists twelve non-exclusive factors that may be considered:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
The determination as to the weight to be given each factor is left to the discretion of the trial court. Jones v. Rodrigue, XXXX-XXXX, p. 11 (La.App. 1st Cir.11/3/00) 771 So.2d 275, 281-82. To reiterate, however, only if it can be shown that a fifty-fifty shared physical custody arrangement is, in fact, both feasible and in the best interest of the child, can such an order be implemented. If both prongs are not met, then the court shall institute a custody arrangement that apportions enough time spent by the child with each parent to assure each parent "of frequent and continuing contact" with the minor child. La. R.S. 9:335(A)(2)(a).
An examination of the evidence presented, applicable to the requisite considerations expressed in La. C.C. art. 134, reveals that the parties compare favorably in some of the factors. Throughout the daughter's childhood, both parents were loving and affectionate. The evidence found in the record supports the trial judge's conclusion that while Mrs. Stephens is a "more nurturing and positive person," Mr. Stephens would like to have a better emotional relationship with his daughter. Both parties have the ability to provide for the child's needs and both have evidenced an intent to continue in the proper upbringing of the minor. Each *779 parent lives in a home of his or her own that provides a stable and adequate environment for the raising of the child. Additionally, both parents reside in the Central area where the minor has lived continuously and gone to school. Both parents are also mentally, physically, and morally fit. With regard to the twelfth factor, the trial court stated:
Jayne Stephens testified that she was the primary caretaker of the children during the marriage of the parties. However, the evidence also indicated that Mr. Stephens was actively involved in caring for the children, and he willingly accepted parenting duties, such as driving the children after school, taking the children to the doctor, and cooking.
A review of the record however, reflects that there are several significant factors that must be reconsidered in light of the Evans v. Lungrin mandate: (1) the absence of sibling support that was available to the pre-teenage daughter when she was accompanied by her older brother, A.R.S., during the weekly changes in physical custody (A.R.S. is now eighteen years of age and is no longer required to spend alternating weeks with each parent); (2) the reasonable preference of the child who is now an adolescent; (3) the increasing opportunities for extra-curricular activities of a teenager and her individual schedules that should to some extent be accommodated; (4) the degree of supervision that can be afforded by each parent during early morning and late evening (the father leaves home at 5:15 each work morning and goes to bed in the early evening, the daughter related she is also home alone when her father goes out, and there is some indication of inappropriate internet use by A.E.S.); (5) the ability of A.E.S. to get to school under the current arrangement and the difference in academic achievement during the times she is with the father and when she is with the mother; and (6) the significance and weight that should be afforded the father-daughter and mother-daughter relationships during the adolescent years.
The circumstances of this cause make it difficult for an appellate court, in de novo review, to fully formulate a detailed custody plan without input from the parties who must be able to communicate to support joint custody and the finding of the best interest of the child. Mindful of the authority of La. C.C.P. art. 2164, authorizing the appellate court to render any judgment which is just, legal, and proper upon the record, we deem it necessary, in the absence of agreement by the parties, to remand the matter for a hearing to formulate that detailed custody plan in accordance with La. R.S. 9:335, La. C.C. art. 134 and the mandate of Evans v. Lungrin.
It is unnecessary to address appellant's remaining assignment of error.

CONCLUSION
We affirm the award of joint custody and the designation of the mother as domiciliary parent. However, we must reverse the custody plan alternating physical custody between the parents each week and remand for a hearing to formulate a custody plan in accordance with this opinion and with the requirements of La. R.S. 9:335, La. C.C. art. 134, and the mandate of Evans v. Lungrin. All costs of this appeal are to be borne equally by the parties.
AFFIRMED IN PART, REVERSED IN PART and REMANDED.
NOTES
[1] Hon. William F. Kline Jr., retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] A.R.S., the elder of the two children, is now of legal age.
[3] Additionally, we note that in Remson, the evidence illustrated that the circumstances were "as close to ideal as custody cases come," and where the court is presented with factual circumstances such as in Remson, it is understood that equal physical custody should be granted by the trial court. Remson v. Remson, 672 So.2d at 413. However, the ideal factual scenario presented in Remson rarely arises.
[4] This fact is evidence by the trial court's recitation in its reasons for judgment, as follows:

Additionally, while the best interest of the child remains the paramount concern in making custody determinations, that interest must be balanced with a parent's right to equally share the physical custody of the child where feasible. Id. [Remson, supra.] See also Bynog v. Bynog, 95-173 (La.App. 3d Cir.7/26/95), 663 So.2d 86.