NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

07-0190


CHRISTIAN D. CHESSON

VERSUS

SARAH REBECCA DUHON CHESSON


\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT,
PARISH OF CALCASIEU, NO. 2003-2782
HONORABLE GUY E. BRADBERRY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

JIMMIE C. PETERS
JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Jimmie C. Peters, and Glenn B. Gremillion, Judges.


REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.


Harley M. Brown
Attorney at Law
854 Main Street
Baton Rouge, LA 70802
(225) 336-0353
COUNSEL FOR PLAINTIFF/APPELLANT:
    Christian D. Chesson

Kathleen Kay
Attorney at Law
Post Office Box 2042

**Lake Charles, LA 70602**
**(337) 439-7616**
**COUNSEL FOR DEFENDANT/APPELLEE:**
   **Sarah Rebecca Duhon Chesson**

PETERS, J.

As part of this lengthy and contentious litigation between Christian D. Chesson and his former wife, Sarah Rebecca Duhon Chesson, the trial court rendered a judgment awarding the litigants joint custody of their two minor children. In that judgment, the trial court named Mrs. Chesson domiciliary parent, established a visitation schedule for Mr. Chesson, and found both litigants in constructive contempt of court on various grounds. Mr. Chesson has appealed that judgment, asserting four assignments of error. In her answer to the appeal, Mrs. Chesson asserts two assignments of error. For the following reasons, we affirm in part, reverse in part, and remand the matter to the trial court for further proceedings consistent with this opinion.

## DISCUSSION OF THE RECORD

The parties were married on October 10, 1996, and ultimately divorced on September 23, 2004. Two children were born of the marriage: Trevor, born June 3, 1997, and Madison, born July 6, 1999. During their marriage Mrs. Chesson did not work outside the home and was the primary caretaker of the children. Mr. Chesson maintained a law practice in Lake Charles and New Orleans. When the parties physically separated in September of 2002, they shared physical custody of the children. However, that shared relationship came to an end when, on May 23, 2003, Mr. Chesson filed a petition seeking an *ex parte* order for temporary custody of the children.[1] However, at the hearing held on that same day, the parties entered into a stipulation that they would share physical custody of the children on an equal basis. Specifically, they agreed that each parent would have custody on alternate weeks.

---

[1]Because of the extensive procedural history in the litigation, which is still pending in the trial court on the child support issue, we discuss herein only those matters immediately relevant to this appeal.

On August 13, 2003, the trial court entered an order adopting its hearing officer's interim recommendation that Mr. Chesson pay Mrs. Chesson $2,297.00 in monthly child support and $1,100.00 in monthly periodic spousal support. Thereafter, on September 10, 2003, Mr. Chesson confirmed a preliminary default and the trial court awarded him a judgment of divorce.

On September 30, 2003, Mrs. Chesson filed a rule to show cause why her former husband should not be held in contempt of court for failing to timely pay $7,840.00 in child support and periodic spousal support, as well as a rule to show cause why he should not be held in contempt of court for failing to answer discovery requests as required by a September 16, 2003 trial court order.[2] Almost ten months later, on July 2, 2004, Mrs Chesson filed a petition to annul the divorce judgment, alleging that the September 10, 2003 decree was obtained through fraud or ill practices. She combined this with another rule to show cause why Mr. Chesson should not be held in contempt of court for failure to comply with the child support and periodic spousal support order—this time asserting that the amount owed had increased to $14,864.52.[3]

The trial court set aside the divorce judgment after a September 16, 2004 hearing. Seven days later, the trial court rendered judgment granting a judgment of divorce.

The issues raised by the filings mentioned above remained dormant until a hearing which began on February 7, 2006, and extended through February 13, 2006. Following presentation of evidence by both parties, the trial court took the issues

[2]The order was filed on September 8, 2003, but the discrepancy in the dates does not affect the issues in this appeal.

[3]The parties each filed additional rules for contempt against the other, alleging violations of various court orders, but those rules are not at issue in this appeal.

under advisement. In its twenty-six page written reasons for judgment rendered June 21, 2006, the trial court awarded the parties joint custody of the minor children, naming Ms. Chesson as domiciliary parent; formulated a joint custody plan; and found Mr. Chesson in contempt of court with respect to the September 30, 2003 and July 2, 2004 rules, and for violating the trial court's order of sequestration of witnesses during the February 2006 trial. The trial court executed a judgment to that effect on October 12, 2006. The joint custody plan filed with the judgment provided, among other points, that during the school year Mr. Chesson had visitation on alternating weekends from the end of school on Thursday until Monday morning, and that during the summer holidays Mr. Chesson had visitation on an alternating week basis.

In his appeal, Mr. Chesson asserts that the trial court erred (1) in designating his former wife as domiciliary parent; (2) in changing the equal sharing custodial arrangement; (3) in adopting a visitation plan not in compliance with the local rules of court; and (4) in finding him in contempt of court. In her answer to the appeal, Mrs. Chesson asserts that the trial court erred (1) in awarding joint custody to her former husband and (2) in the amount of visitation granted Mr. Chesson.

## OPINION

### *Mr. Chesson's First Two Assignments of Error*

Mr. Chesson asserts in these assignments of error that neither the law nor the evidence supports the designation of Mrs. Chesson as the domiciliary parent or the reduction of his custodial rights from equal sharing to mere visitation rights.

Each child custody case must be viewed in light of its own particular set of facts and circumstances with the paramount goal of reaching a decision that is in the

3

best interest of the child. *Barberousse v. Barberousse*, 556 So.2d 930 (La.App. 3 Cir. 1990). The best interest evaluation is fact-intensive and requires the weighing and balancing of factors favoring or opposing custody in the competing parties on the basis of the evidence presented in each case. *Romanowski v. Romanowski*, 03-124 (La.App. 1 Cir. 2/23/04), 873 So.2d 656. The trial court is vested with broad discretion in deciding child custody cases and its decision will not be disturbed absent a clear abuse of discretion. *Bagents v. Bagents*, 419 So.2d 460 (La.1982); *Stephens v. Stephens*, 02-402 (La.App. 1 Cir. 6/21/02), 822 So.2d 770. Additionally, La.Civ.Code art. 134 lists twelve nonexclusive factors that are relevant in determining the best interest of the child.

In a decree of joint custody, the court shall designate a domiciliary parent except when there is an implementation order to the contrary or for other good cause shown. La.R.S. 9:335(B)(1). To the extent it is feasible and in the best interest of the children, physical custody of the children should be shared equally. La.R.S. 9:335(A)(2)(b). Nonetheless, the trial court's finding that joint custody is in the best interest of the child does not necessarily require an equal sharing of physical custody. *See Stephens*, 822 So.2d 770. The implementation order should, however, allocate the time periods during which each parent shall have physical custody of the children so that the children are assured of "frequent and continuing contact" with both parents. La.R.S. 9:335(A)(2)(a).

In challenging the trial court's determinations of domiciliary parent and visitation schedule, Mr. Chesson questions the trial court's weighing and balancing of the factors listed in La.Civ.Code art. 134. We disagree. In its reasons for judgment, the trial court made detailed findings of fact on each of the twelve factors

4

set forth in Article 134 by summarizing the testimony of each of the witnesses. We agree with and adopt the trial court's written reasons for judgment that relate to its decision on custody, although we do not reproduce those reasons here out of consideration for their length. It is sufficient to say that the record establishes that the trial court's decision to name Mrs. Chesson as the domiciliary parent is supported by the evidence and we find no clear abuse of discretion in that decision.

The record before us also supports the trial court's decision to adjust the custody schedule. Dr. Aleisha Pelligrin, a clinical psychologist, testified that a split custody arrangement in a high-conflict case is not a good idea, because it requires a higher level of co-parenting. According to Dr. Pellegrin, as well as other testimony in the record, the Chessons certainly have difficulty with the concept of co-parenting. In fact, the trial court described the relationship between the parties as "toxic."

In this case, as in most child custody cases, the trial court's determination was based heavily on factual findings. It is well settled that an appellate court cannot set aside a trial court's findings of fact in the absence of manifest error or unless those findings are clearly wrong. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse those findings even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Id*. In order to reverse a fact finder's determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. *Stobart v. State, DOTD*, 617 So.2d 880, (La.1993).

5

Based on the circumstances presented in the record, we cannot find that the trial court abused its discretion or was manifestly erroneous in its decision to designate Mrs. Chesson as the domiciliary parent or in its decision to discontinue the interim arrangement where each parent had physical custody of the children on alternate weeks. We find no merit in these two assignments of error.

### *Mr. Chesson's Third Assignment of Error*

While Mr. Chesson assigned as error the trial court "adopting a visitation plan that was not in compliance with the local rules of court," he failed to brief this assignment of error other than to restate it in the conclusion of his brief, saying only: "[a]dditionally, the court should order the imposition of the visitation plan exactly as provided for in the local rules of court." Accordingly, pursuant to Uniform Rules—Courts of Appeal, Rule 2-12.4, we consider this assignment of error abandoned because it has not been briefed.

### *Mr. Chesson's Fourth Assignment of Error*

Louisiana Code of Civil Procedure Article 224(2) provides that constructive contempt is "[w]ilful disobedience of any lawful judgment, order, mandate, writ, or process of the court." To find a person guilty of constructive contempt, the trial court must find the person violated the court's order intentionally, purposely, and without justifiable excuse. *Leger v. Leger*, 00-505 (La.App. 1 Cir. 5/11/01), 808 So.2d 632. The trial court's finding of fact will not be overturned in the absence of manifest error. *Gerace v. Gerace*, 05-1300 (La.App. 3 Cir. 4/5/06), 927 So.2d 622. If a person is found guilty of contempt, "the court shall render an order reciting the facts constituting the contempt, adjudging the person charged with contempt guilty thereof, and specifying the punishment imposed." La.Code Civ.P. art. 225(B). The trial court

6

has great discretion in determining whether a party should be held in contempt for disobeying a court order, and an appellate court should reverse the trial court's decision only when it finds an abuse of that discretion. *Leger*, 808 So.2d 632.

The first contempt judgment contested by Mr. Chesson relates to the content of the September 30, 2003 rule wherein Mrs. Chesson asserted that he was $7,840.00 in arrears on his child support and interim periodic spousal support obligations, and that he had failed to timely answer discovery requests propounded to him. The second contempt judgment relates to the content of the July 2, 2004 rule wherein Mrs. Chesson asserted that Mr. Chesson's child support and interim periodic spousal support arrears had increased to $14,864.52, and that he had denied Mrs. Chesson telephone access with their minor children as required by the July 29, 2003 stipulation.

With regard to both of these findings of contempt, Mr. Chesson appears to first argue that the trial court had stated that it would not address issues of contempt relating to support or financial issues at the February 2006 hearing. In support of that argument, he quotes the following statement of the trial court:

> I know these are the money issues, the financial issues, are going to be deferred to my hearing officer. So, Harold's just going to address those. But on contempt, unless you see another way of doing it, I would guess now would be the time we - -

But Mr. Chesson does not relate the full discussion that took place on whether the contempt rules would be addressed at the hearing. Mr. Chesson's counsel began the discussion on whether the contempt rules which had been filed would be addressed at the hearing, saying:

> *My question is: Are we going to try the contempt issues this week, too? Do I need to go through those at this time? I think it may go to, you*

*know, whether somebody's violating a court order, which is something the Court needs to be – –*

(Emphasis added).

The trial court responded, as follows:

*I don't know when else we can broach those. I don't intend to bifurcate.* So, I know these are the money issues, the financial issues, are going to be deferred to my hearing officer. So, Harold's just going to address those. But on contempt, unless you see another way of doing it, I would guess now would be the time we – –

(Emphasis added).

Reviewing the *full* dialogue concerning whether the allegations of contempt relating to support issues would be addressed at the hearing, we conclude that the trial court stated these issues *would* be addressed at that week's hearing. Thus, Mr. Chesson's argument in this regard has no merit.

Next, Mr. Chesson asserts that the evidence presented at the February 2006 hearing was insufficient to support the trial court's factual conclusion that he was in arrears on his child support and interim spousal support. In making this argument, Mr. Chesson ignores the evidence introduced at a September 16, 2004 hearing wherein the trial court considered Mrs. Chesson's petition for arrearages. At that hearing, Mrs. Chesson provided evidence establishing the full history of Mr. Chesson's payment delinquency. On November 24, 2004, the trial court entered judgment against Mr. Chesson for $17,651.19 in past due unpaid child support and interim periodic espousal support, thereby accepting Mrs. Chesson's evidence as correct. The record in this regard is sufficient to support the trial court's factual findings on this issue. Thus, this argument has no merit.

The final contempt of court judgment related to the trial court's determination that Mr. Chesson had violated "the court's order of sequestration of the witnesses

8

issued at the inception of the trial." The alleged violation relates to the witness appearance of Pamela Williamson, a teacher at St. Margaret's Academy, the school both children attend. Ms. Williamson was scheduled to testify on Mrs. Chesson's behalf on February 9, 2004. She testified that before taking the stand that day, she had a conversation with Mrs. Chesson wherein she was told that Mr. Chesson had testified that she [Ms. Williamson] "[did not] have a backbone." She testified that after this conversation she confronted Mr. Chesson about his statement.

After hearing this testimony, and before adjourning for the day, the trial court found Mrs. Chesson in contempt for violating the order sequestering the witnesses, and stated that "[t]o the extent to which this contempt of this Court over Ms. Chesson is to be exercised is going to be reserved to the conclusion of this case." Nowhere in the record did the trial court find Mr. Chesson in contempt of court for his conversation with Ms. Williamson, nor did the trial court recite the facts constituting the contempt in the judgement or in open court. *See* La.Code Civ.P. art. 225(B) and *Garrett v. Andrews*, 99-1929 (La.App. 1 Cir. 9/22/00), 767 So.2d 941. However, in its judgment, the trial court found *Mr.* Chesson in contempt of court for violating the order for sequestration of witnesses, not *Mrs.* Chesson. Thus, we find that the trial court erred in finding Mr. Chesson in contempt of court for violating the court's order regarding sequestration of witnesses.

As punishment for his three counts of contempt of court, Mr. Chesson was sentenced to imprisonment for ninety days, with an opportunity to purge himself of the contempt. Because we vacate the order finding Mr. Chesson in contempt of court for violating the court's order of sequestration of the witnesses, we remand for the trial court to impose punishment for each of the two remaining counts of contempt,

9

individually. Louisiana Revised Statute 13:4611(1), which establishes the punishment that may be imposed for contempt of court, states that the courts "may punish a person adjudged guilty of *a* contempt of court therein, as follows." (Emphasis added.) The implication is that each count of contempt of court is to be punished individually; one penalty in globo cannot be imposed for multiple counts.

### *Mrs. Chesson's First Assignment of Error*

Mrs. Chesson asserts in this assignment of error that the trial court erred in not awarding her the sole care, custody, and control of the children. We find no merit in this assignment of error.

Mrs. Chesson argues that the testimony reveals that sufficient animosity and rancor exist between Mr. Chesson and her such that they cannot work together to the extent required in a joint custody arrangement, and therefore this court should award sole custody, citing to *Watermeier v. Watermeier*, 504 So.2d 856 (La.1987); *Ard v. Ard*, 628 So.2d 1221 (La.App. 3 Cir. 1993); *Goodwin v. Goodwin*, 618 So.2d 579 (La.App. 2 Cir.), *writ denied*, 623 So.2d 1340 (La.1993); and *Long v. Long*, 458 So.2d 662 (La.App. 3 Cir. 1984). But in its reasons for judgment the trial court made the specific factual finding that "[w]hile it appears to be a concession that responsible communication and compromise may not be attainable in this case, as evidenced by Chris' recorded telephonic communications, this Court remains cautiously optimistic that these parties are capable of cooperating as co-tutors who must work together and agree on the critical issues involving the raising of these children." Applying the law and the reasons set forth in the analysis of Mr. Chesson's first assignment of error, we reject this assignment as well.

### *Mrs. Chesson's Second Assignment of Error*

Mrs. Chesson argues that the schedule established by the trial court which allows visitation on school nights is an abuse of discretion because the children experience difficulty with their school work.  Applying the law and for reasons set forth in the analysis of Mr. Chesson's second assignment of error, we reject this assignment as well.

### CONCLUSION

We reverse that portion of the judgment finding Christian Chesson in contempt of court for violating the court's order of sequestration of witnesses and remand for the trial court to impose punishment for each of the remaining counts of contempt.  In all other respects, we affirm the judgment.  We tax each party with one-half of the costs of appeal.

**REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.**

11